2014 UT App 211

# THE UTAH COURT OF APPEALS

KRISTEN A. ROBERTS,
Petitioner and Appellee,

*v.*

TY H. ROBERTS,
Respondent and Appellant.

Opinion
No. 20120302-CA
Filed September 5, 2014

Second District Court, Farmington Department
The Honorable Robert J. Dale
No. 094701054

Brad C. Smith and Ryan B. Wilkinson, Attorneys
for Appellant

Brittany R. Brown, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE JOHN A. PEARCE and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

ROTH, Judge:

¶1    Ty H. Roberts (Husband) appeals the trial court's ruling ordering him to pay Kristen A. Roberts (Wife) alimony and attorney fees, denying his request for reimbursement of child care expenses, allocating to both parties the tax liability of Wife's business, and refusing to grant him a fault-based divorce or take

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

into account Wife's extramarital affair in its alimony calculation. We affirm in part, reverse in part, and remand to the trial court.

BACKGROUND

¶2     Wife and Husband were married in September 1989 and have four children. The couple separated in June 2009 after Wife admitted to an extramarital affair. Wife filed a petition for divorce one month later, citing irreconcilable differences. Husband filed an answer and counter-petition seeking a divorce for "[i]rreconcilable differences," or alternatively, "on the basis of [Wife]'s adultery."

¶3     Both parties worked outside the home throughout their marriage. Husband worked at a bank, earning a gross monthly income of $6,886. Wife worked as a sales representative at a fashion retailer for thirteen years, but at the time of the divorce, she had opened a deli franchise. The business struggled, and Wife drew a monthly salary of $1,000 until about June 2010 and $2,000 thereafter.

¶4     The court issued a temporary order in September 2009 that awarded the parties joint physical custody of their three younger children but gave primary physical custody of their oldest son to Husband. Because Husband had primary custody of the couple's oldest child, Wife was ordered to pay Husband $121.23 per month in child support, and she was also required to pay $146.25 per month for her share of the children's medical and dental insurance as well as half of any out-of-pocket medical costs the children incurred. In making this determination, the court imputed to Wife a monthly income of $1,256 (minimum wage). In a second temporary order issued three months later, the court ordered Husband to pay $1,500 per month in temporary spousal support, but it later reduced that amount to $1,281.

¶5    The couple's oldest son turned eighteen in June 2010, and the parties agreed that the temporary child support obligations should be revisited as a result. Husband argued that the court should impute to Wife a different income when making this new calculation because he believed Wife had significantly understated her earnings from the deli business and was actually taking home as much as $3,500 per month. The child support issue was ultimately reserved for trial. After considering the evidence presented at the February 2011 trial, the court imputed to Wife a gross monthly income much higher than minimum wage but retroactively modified the temporary child support from the time of the oldest son's majority through February 2011 using the same minimum-wage income it had imputed to Wife in the second temporary order. In this regard the court explained only that "for the purposes of the temporary award it is reasonable to use the same incomes of the parties used to calculate child support in the Temporary Order." As a result, the court awarded Wife back child support in the amount of $518 per month from July 2010 through February 2011. The court denied Husband's request to retroactively modify the award of unpaid child support using Wife's higher imputed income from trial.

¶6    The court ultimately entered a decree of divorce in February 2012, granting Wife a divorce from Husband based on irreconcilable differences. The parties were awarded joint physical and legal custody of their three minor children. To calculate Husband's alimony and child support obligations, the court imputed to Wife a gross monthly income of $3,000 and found that she had $4,000 in reasonable monthly expenses. Based on Husband's gross monthly income of $6,886 and monthly expenses of $4,000, the court awarded Wife $1,281 per month in permanent alimony, $381 per month in child support, and $5,000 in attorney fees. Wife was awarded her deli business with its debt, but the court ordered that both "parties shall be equally liable" for any tax liability that arose from the business for any year in which they had filed a joint tax return. The court

also denied Husband's request for reimbursement for medical expenses of the children that he claimed Wife had failed to pay between July 2009 and February 2011.

ISSUES AND STANDARDS OF REVIEW

¶7    Husband raises a number of issues on appeal. First, he challenges the trial court's decisions awarding alimony, refusing to retroactively modify the temporary child support order, and granting Wife's request for attorney fees. Because trial courts have broad discretion to award alimony, child support, and attorney fees, we will not disturb such decisions absent an abuse of discretion. *Connell v. Connell*, 2010 UT App 139, ¶¶ 5–7, 233 P.3d 836. That means that "as long as the court exercise[d] its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions," we will not substitute our judgment for the trial court's. *Id.* ¶ 5 (citation and internal quotation marks omitted).

¶8    Second, Husband argues that the court improperly denied his request to offset temporary child support and alimony payments with medical expenses he incurred for his children during the divorce proceedings. He also contends that the court erred in awarding Wife her deli business but dividing equally between the parties the tax consequences the business incurred during their marriage. "Trial courts have considerable discretion in determining the financial interests of divorced parties," so we will not disturb either decision unless the trial court abused its discretion. *Bingham v. Bingham*, 872 P.2d 1065, 1067 (Utah Ct. App. 1994) (citation and internal quotation marks omitted).

¶9    Third, Husband argues that the trial court failed to take into account Wife's extramarital affair when it calculated alimony and refused to grant Husband's counter-petition for a fault-based divorce. Husband further urges us to overrule *Mark v. Mark*, 2009 UT App 374, 223 P.3d 476, a case the trial court

relied on that instructs courts to ignore evidence of fault when making alimony determinations. *See id.* ¶ 20. "We review the trial court's interpretations of law for correctness." *Trubetzkoy v. Trubetzkoy*, 2009 UT App 77, ¶ 10, 205 P.3d 891. Husband's final issue relates to Husband's claim that his alimony obligation ought to be terminated. Specifically, he challenges the court's determination that Wife was not cohabiting with a male friend (Friend). "While we defer to the trial court's factual findings unless they are shown to be clearly erroneous, we review its ultimate conclusion [of cohabitation] for correctness." *Levin v. Carlton-Levin*, 2014 UT App 3, ¶ 9, 318 P.3d 1177 (citation and internal quotation marks omitted).

ANALYSIS

I. Inadequate Findings of Fact and Conclusions of Law

¶10    A trial court's findings of fact and conclusions of law must be "sufficiently detailed" to allow "a reviewing court to ensure that the trial court's discretionary determination was rationally based upon" the relevant facts and controlling legal principles. *Connell*, 2010 UT App 139, ¶ 12 (citation and internal quotation marks omitted). We have stated that a court's findings and conclusions must be sufficiently "detailed," including "enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Id.* (citation and internal quotation marks omitted). In practice, this does not mean that trial courts must analyze each issue in the same depth as an appellate opinion; rather, the court's findings and conclusions must contain just enough detail to allow a reviewing court "to ascertain the basis of the trial court's decision." *Allen v. Ciokewicz*, 2012 UT App 162, ¶ 42, 280 P.3d 425 (citation and internal quotation marks omitted). A trial court decision with deficient findings prevents appellate courts "from effectively reviewing the trial court's decision," and it may

therefore be "remand[ed] for the entry of more-detailed findings." *Id.* (citations and internal quotation marks omitted).

¶11   We conclude that the trial court's factual findings and conclusions are deficient in a number of areas, and we remand for the entry of additional findings of fact on the following issues: (1) the amount and duration of alimony awarded to Wife, (2) the denial of Husband's motion to modify the temporary child support award, and (3) the decision to award Wife attorney fees. We express no opinion on the merits of the underlying issues and emphasize that each of these questions is within a trial court's broad discretion. Our decision to remand is not meant to point the court to any particular result; rather, on remand the court ought to provide a fuller explanation for whatever conclusion it reaches.

A.    Alimony

¶12   Trial courts consider a number of factors when determining the amount and duration of alimony, focusing principally on the three *Jones* factors: "(1) the financial condition and needs of the recipient spouse, (2) the ability of the recipient spouse to produce sufficient income, and (3) the ability of the payor spouse to provide support." *Richardson v. Richardson*, 2008 UT 57, ¶ 6, 201 P.3d 942 (citing *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985)). Other relevant considerations include "the length of the marriage" and "whether the recipient spouse has custody of minor children requiring support." Utah Code Ann. § 30-3-5(8)(a)(iv), (v) (LexisNexis 2007).[2] As discussed, a trial court's analysis of each factor must contain factual findings with enough detail to permit meaningful appellate review of its decision.

---

2. Except where we have noted otherwise, we cite the 2007 version of the Utah Code because that version was in effect at the time the parties filed for divorce.

¶13    The trial court found that Wife had $4,000 in monthly expenses, and it imputed to her a monthly income of $3,000. Her monthly shortfall was accordingly $1,000. Husband argues that Wife's alimony award of $1,281 is excessive for two reasons. First, he cites precedent indicating, in his words, that "a recipient spouse's demonstrated need . . . must constitute the maximum permissible alimony award" and argues that the trial court awarded Wife $281 per month beyond her demonstrated financial need. (Citation and internal quotation marks omitted.) Second, he contends that because Wife claimed expenses for the children as personal expenses in her financial declaration, the court should have treated Wife's $381 child support award as income in calculating alimony. Husband maintains that these oversights resulted in an alimony award "more than $600 per month *more* than Wife's determined monthly need." In other words, because the court found that Wife had $1,000 in unmet monthly needs—including child expenses—Husband argues that the court abused its discretion when it awarded Wife $1,662 in support payments ($381 in child support plus $1,281 in alimony). Husband also contends that the court erred when it "awarded Wife alimony for the maximum possible duration, 23 years," instead of ordering a shorter period of rehabilitative alimony. We consider each issue in turn.

1.    The Amount of Alimony

¶14    The purposes of alimony are "(1) to get the parties as close as possible to the same standard of living that existed during the marriage, (2) to equalize the standards of living of each party, and (3) to prevent the recipient spouse from becoming a public charge." *Richardson*, 2008 UT 57, ¶ 7 (citations omitted). The core function of alimony is therefore economic—it should not operate as a penalty against the payor nor a reward to the recipient. *Myers v. Myers*, 2010 UT App 74, ¶ 12, 231 P.3d 815. For that reason, "regardless of the payor spouse's ability to pay more, the [recipient] spouse's demonstrated need must . . . constitute the maximum permissible alimony award." *Jensen v.*

*Jensen*, 2008 UT App 392, ¶ 13, 197 P.3d 117 (alteration and omission in original) (citation and internal quotation marks omitted). We conclude that although the trial court made detailed findings of fact on Wife's needs, her income, and Husband's ability to provide support, the court did not adequately explain why it calculated Husband's alimony and child support obligations in a manner that appears to have exceeded Wife's demonstrated monthly need of $1,000.

¶15     The trial court made detailed findings on each of the *Jones* factors. The court found that Husband and Wife were both employed throughout the duration of their marriage. Wife worked as a sales representative for a fashion retailer for thirteen years before opening her deli business in 2004. As a sales representative, Wife earned more than $3,600 a month, but her monthly draw from the deli business was just $1,000 between 2004 and 2010. After that, Wife's draw increased to $2,000. The court evaluated expert testimony from each side on Wife's potential future income and imputed to Wife an annual income of $36,000, or "a gross monthly income of $3,000.00." The court also found that Wife had reasonable monthly living expenses of $4,000. With respect to Husband's ability to provide support, the court found that Husband has worked in banking since 1998 and earns $6,886 per month. Husband testified that his monthly living expenses were $6,500, but the court determined that he had included in that amount expenses incurred for the parties' adult son and Husband's temporary alimony obligation. After deducting these payments, the court found that Husband's monthly living expenses were $4,000.

¶16     The court determined that Wife's "after-tax income" was insufficient to meet her monthly needs and that an "alimony award of $1,281.00 per month [was] . . . reasonable and proper" for "a term no longer than the term of the marriage of the parties," which was between twenty-two and twenty-three years. The court also awarded Wife $381 per month in child support. The court denied Husband's post-trial request to

modify the alimony award, noting that the award was "fair and equitable" in light of "the tax implications" to both parties.

¶17 Husband argues that "the court failed to explain why or how it reached its decision" to award Wife support payments in excess of her demonstrated need, particularly in light of the child expenses Wife listed in her financial declaration. We agree and conclude that the trial court's findings of fact are deficient in two respects. First, the court did not explain why it declined to treat the child support award as income in making its alimony determination when it apparently considered the children's expenses as part of Wife's need. While "[i]t is typically best practice for trial courts to analyze alimony without factoring in child support obligations," we have held that treating child support payments as the recipient spouse's income is permissible where the recipient "combine[s] her expenses with those of the children" in her financial declaration. *Dobson v. Dobson*, 2012 UT App 373, ¶ 11, 294 P.3d 591. Here, Wife's $4,000 in monthly expenses included $200 for "Children's education expenses"; $300 for "Children's dance classes, costumes, [and] other fees"; and $246 for her share of the children's medical and dental expenses. It is unclear whether she also included the children's food and other necessities under those expense categories. The court awarded Wife a total of $1,662 in monthly support payments ($1,281 in alimony plus $381 in child support) even though its findings demonstrated that Wife's monthly need—which might include some significant part of her children's expenses—was just $1,000. While that choice might have been within the trial court's discretion, *see Connell v. Connell*, 2010 UT App 139, ¶¶ 5, 7, 233 P.3d 836, the court did not explain why it did not include the child support payment as income in its alimony determination when at least some of the children's expenses seem to have been factored into the alimony calculation already.

¶18 Second, even if the trial court had adequately explained its decision to exclude child support from Wife's income, the

court still awarded $1,281 per month in alimony even though Wife's demonstrated need seems to have been just $1,000. The court's justification for the $281 disparity was a simple reference to "tax implications." Presumably, the court believed that there were tax consequences to one or both parties stemming from its determinations of income and expenses that would leave Wife with insufficient net income to meet her needs, even though the gross income seemed adequate. But the court did not explain either its reasoning or its calculation, and we are unable to discern the basis for the court's conclusion. Consequently, even though the court carefully analyzed Husband's ability to pay, Wife's needs, and Wife's earning capacity, there are simply not enough "subsidiary facts to disclose" how the court determined that an alimony award in excess of Wife's demonstrated need was warranted. *See Hall v. Hall*, 858 P.2d 1018, 1021 (Utah Ct. App. 1993); *see also Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct. App. 1994) (remanding a divorce "case for reassessment of the alimony award" because the trial court "awarded [the recipient spouse] $701.76 per month more than her projected financial requirements" without offering any "explanation for such a discrepancy"). We therefore conclude that the trial court did not make sufficient factual findings to justify the amount of Wife's alimony award, and we remand for a reassessment of Husband's alimony obligation.

2.      Rehabilitative Alimony

¶19     Husband also contends that the "trial court incorrectly awarded Wife alimony for the maximum possible duration, 23 years," instead of rehabilitative alimony. Because the court did not provide sufficient analysis of its alimony duration determination, we are unable to appropriately address this issue on appeal and so must remand for the trial court's further consideration.

¶20     As we have discussed, the purposes of alimony are "(1) to get the parties as close as possible to the same standard of living

that existed during the marriage, (2) to equalize the standards of living of each party, and (3) to prevent the recipient spouse from becoming a public charge." *Richardson v. Richardson*, 2008 UT 57, ¶ 7, 201 P.3d 942 (citations omitted). Determining the proper duration of alimony payments can be challenging when the recipient spouse is underemployed or not working because the recipient's earning potential must be estimated and long-term needs are therefore difficult to ascertain. Depending on the circumstances, trial courts consider two different types of alimony to deal with this uncertainty—either the more traditional permanent alimony award for up to the length of the marriage or rehabilitative alimony, which typically is for a shorter period. "[T]he length of the marriage, the age of the recipient spouse, and the employment history and employability of the recipient spouse are relevant factors to consider in determining whether an award of rehabilitative alimony, rather than traditional alimony, is appropriate." *Boyer v. Boyer*, 2011 UT App 141, ¶ 17, 259 P.3d 1063 (alteration in original) (citation and internal quotation marks omitted); *see, e.g.*, *Jones v. Jones*, 700 P.2d 1072, 1076 (Utah 1985) (reversing an award for rehabilitative alimony where the recipient spouse was "in her mid-50's, possesse[d] few marketable job skills, and ha[d] little hope of retraining"). Rehabilitative alimony can be appropriate when the recipient spouse has the requisite education and work history to eventually meet his or her own needs, and alimony functions to "'close the gap between actual expenses and actual income to enable the receiving spouse to'" become self-sufficient before "'the [rehabilitative period] end[s].'" *Boyer*, 2011 UT App 141, ¶ 16 (quoting *Mark v. Mark*, 2009 UT App 374, ¶ 12, 223 P.3d 476). A trial court has broad discretion to fashion the alimony award that is most appropriate to the particular circumstances before it, but the court must explain its decision with adequate findings of fact. *See supra* ¶ 10.

¶21    Here, Husband requested rehabilitative alimony during closing argument, and there are circumstances in this case that could weigh in favor of such an award. Wife was forty-three

years old at the time of trial and had completed two years of college. She was employed throughout the marriage, including thirteen years as an award-winning sales associate at a large retailer and then another seven years as a small business owner. Although Wife's deli business struggled, her employment history demonstrated that she was a talented salesperson, earning between $41,000 and $47,000 each of her last seven years in retail sales. The court agreed with Wife that it could take several years for her to rebuild her career in sales, and it imputed to her an annual income of $36,000.

¶22    But the trial court's findings of fact and conclusions of law in this case do not address Husband's request for rehabilitative alimony, concluding simply that "[a]limony should be paid commencing March 2011 and continuing each month thereafter until . . . the expiration of a term no longer than the term of the marriage of the parties." As a consequence, the trial court's factual findings are insufficient to support a permanent alimony award in the face of Husband's request and evidence that might support a rehabilitative award. *See, e.g.*, *Jensen v. Jensen*, 2008 UT App 392, ¶¶ 2, 10, 19, 20, 197 P.3d 117 (concluding that the trial court did not abuse its discretion by awarding rehabilitative alimony where the recipient spouse had an associate's degree, worked sporadically for four years during a sixteen-year marriage, was not employed when the parties divorced, and had an imputed income of $1,419 per month). Accordingly, we remand for the trial court to reconsider the duration of its alimony award. We reiterate the discretion afforded to the trial court.

B.    Child Support

¶23    Husband argues that the trial court abused its discretion when it refused to retroactively modify the temporary child support order. Before trial, the court entered a temporary order requiring Wife to pay Husband "$121.23 per month" in child support based on Wife's then "imputed gross income . . . of

$1,256.00 per month" and the fact that Husband had temporary physical custody of the couple's oldest son while the parties shared joint physical custody of their other three children. Before trial, the couple's oldest son turned eighteen, and the parties asked the court to recalculate child support. Husband urged the court to use what he considered a more realistic assessment of Wife's income in making that calculation, but the issue was ultimately reserved for trial. At trial, the court imputed to Wife a monthly income of $3,000, but it denied Husband's request to retroactively modify Wife's temporary child support obligation, stating only that "for the purposes of the temporary award it is reasonable to use the same incomes of the parties used to calculate child support in the Temporary Order."

¶24    Wife maintains that there was no basis in the record to retroactively modify the temporary child support award, and she directs us to a variety of evidence that shows her actual income was far below $3,000 while the temporary order was in place. For example, Wife testified at trial that her deli business operated at a loss, and the trial court found that Wife received a $1,000 monthly salary from the deli until 2010 when her salary increased to $2,000 per month. Wife maintains that "[t]he fact that the trial court determined that [she] has the potential to earn $3,000 per month is no indication that she was earning even close to that amount during the time frame of 2009–2010" when the temporary order was in place. That may be true, but because the trial court's factual findings are too terse to support that conclusion, we conclude that its denial of Husband's request to retroactively modify the temporary order must be remanded for further consideration and appropriate findings.

¶25    Courts have discretion to modify child support and alimony awards retroactively. *Wall v. Wall*, 2007 UT App 61, ¶ 20, 157 P.3d 341; *see also* Utah Code Ann. § 78B-12-112(4) (LexisNexis 2007). In *McPherson v. McPherson*, 2011 UT App 382, 265 P.3d 839, we reversed a trial court's refusal to modify an alimony award retroactively where the court calculated the

husband's support obligation based on a six-figure income that had diminished drastically after he lost his job. *Id.* ¶¶ 2, 21–23. We noted that even though "harsh awards or a disparity in obligations can be justified by a finding of one or more discretionary factors," "the trial court . . . did not identify any . . . explanation for the imposition of a temporary award beyond Husband's financial capability." *Id.* ¶ 20. In this case, it is possible, as Wife seems to suggest, that the court imputed a monthly income of $1,256 to more accurately reflect Wife's actual earnings and earning capacity before trial but used $3,000 a month in the divorce decree to reflect the forward-looking nature of income imputation and to give her an incentive to reach her earning capacity in the context of an award of permanent alimony over a longer term. Wife is speculating, however, because the court did not explain how it reached its conclusion. Rather, it simply determined that using $1,256 instead of $3,000 was "reasonable." Without any explanation or subsidiary factual findings to justify this decision, the court's findings and conclusions are inadequate to support its decision, and we therefore remand for the court to reconsider the issue. *See Connell v. Connell*, 2010 UT App 139, ¶¶ 5, 7, 12, 233 P.3d 836.

C.    Attorney Fees

¶26    Husband next challenges the trial court's decision to award Wife $5,000 in attorney fees. In the initial findings of fact and conclusions of law, the court found that Wife incurred $56,275 in attorney fees and that she had "borrowed over $33,000 from her parents to partially pay for the fees." "Given the relative financial circumstances the parties will have after the divorce, and in applying the factors set forth in Rule 102, Utah Rules of Civil Procedure," the court concluded that "it is fair and equitable that [Husband] pay [Wife] the amount of $25,000 toward her attorney fees and costs." The court later reduced that amount to $5,000 without further findings of fact or explanation. Husband argues that the court's factual findings are inadequate to support its decision to award Wife attorney fees. We agree.

¶27 In divorce cases, "[b]oth the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 30, 147 P.3d 464 (citation and internal quotation marks omitted). Attorney fee awards, however, "must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees. And, [f]ailure to consider these factors is grounds for reversal on the fee issue." *Id.* (alteration in original) (citations and internal quotation marks omitted). For example, in *Stonehocker v. Stonehocker*, 2008 UT App 11, 176 P.3d 476, we reversed an attorney fee award where the court found that the wife "has the need for attorney[] fees[,] . . . [the husband] has the ability to pay," and "the attorney[] fees were reasonable." *Id.* ¶ 51 (first and last alteration in original) (internal quotation marks and citation omitted). We noted that even though the court "address[ed] the parties' annual income and monthly expenses" in its alimony determination and mentioned the factors pertinent to an attorney fee award, the court made no "express factual findings related to the award of attorney fees that include[d] findings on the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Id.* ¶¶ 50–51 (citation and internal quotation marks omitted).

¶28 Wife maintains that the court's detailed findings of fact regarding the parties' incomes, expenses, and assets to determine alimony and divide marital property are enough to support the attorney fee award. But even if "there are facts in other sections of the findings and conclusions that could support [an attorney fee] award," failure to enter specific factual findings on each of the pertinent factors is reversible error. *See id.* ¶ 51. Here, the trial court indicated that Wife had incurred more than $50,000 in attorney fees and had "borrowed over $33,000 from her parents to partially pay for the fees." But other than a passing reference to the parties' "relative financial circumstances," the court did not make any specific findings on

the reasonableness of the award, Husband's ability to pay, or Wife's needs.[3] Consequently, we conclude that the court's findings of fact are insufficient to support its conclusion that an attorney fee award was warranted because regardless of the ultimate propriety of the award, "it is not apparent from the record before us that the court followed the appropriate analytical path in reaching its conclusion." *See Allen v. Allen*, 2014 UT App 27, ¶ 28, 319 P.3d 770; *see also Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997) ("Without adequate findings of fact, there can be no meaningful appellate review.").

D.      Summary

¶29     In summary, we conclude that the trial court's findings of fact are insufficiently detailed to permit meaningful appellate review of the amount of alimony awarded to Wife. We also conclude that in light of Husband's request for rehabilitative alimony, the court should have more fully explained its decision to award permanent alimony for the length of the marriage. Finally, we conclude that the court did not adequately explain its decisions awarding Wife attorney fees and denying Husband's request to retroactively modify his child support obligation. Accordingly, we remand for the court to reconsider these issues and enter additional findings of fact. In doing so, we reiterate that our decision should not be read to require the court to reach any particular result on the merits. Rather, we leave to the trial court the task of resolving each issue with supporting findings of fact that provide a fuller explanation for whatever conclusion it determines is most appropriate. *See McPherson*, 2013 UT App 302, ¶ 8 (noting that comments on the trial court's estimation of

---

3. Nor did the court offer any explanation for its decision to decrease Wife's award from $25,000 to $5,000. Although Wife has not appealed that decision, we mention it simply because it underscores the difficulty of tracing the factual and legal path to the court's ultimate attorney fee award.

the husband's income before remanding for additional findings of fact "were intended to guide and focus the trial court's consideration on remand on an issue we conclude had not been adequately addressed," not "to superimpose any particular findings of fact, limit the sound exercise of the trial court's discretion, or dictate any particular result").

## II. Medical Expenses and the Tax Liability of Wife's Business

¶30   Husband next argues that the trial court erred when it denied his request to offset unpaid temporary alimony payments with medical and dental expenses he incurred for the children during the period of temporary support. He also asserts that the court should not have divided the tax obligations of Wife's deli business equally between the parties while awarding ownership of the business solely to Wife. We decline to disturb either decision because Husband has not met his burden of persuasion on appeal.

### A.     Medical and Dental Expenses

¶31   The trial court entered temporary orders in September and December 2009 that required Husband to pay Wife temporary support and ordered each party to pay "one-half of any child's deductible, co-pay or non-covered amounts for . . . essential medical or dental services or prescriptions." Husband asserts that even after he made repeated "timely requests for reimbursement from Wife" for her portion of the children's medical expenses, she never paid her half. According to Husband, in "August and October 2010, after [Wife's] repeated failure to reimburse [him], [he] offset these amounts against alimony and child support payments he owed to Wife."

¶32   The trial court found that Husband improperly offset these expenses from his alimony payments and denied his request for reimbursement. The court noted that Husband included in the amounts he offset not just medical expenses, but

also "expenses relative to school fees, extracurricular activity costs, clothing, and auto expenses for the children," which were not the subject of either of the temporary orders. The court also noted that Husband did not support the other expenses he claimed with "receipts verifying costs incurred," so there was "insufficient evidence to support an award to [Husband] for unpaid child-related expenses."

¶33   On appeal, Husband does not point us to any evidence that calls the court's reasoning into question, and he cites no controlling case law or statute that requires a different result. Rather, Husband merely cites portions of his trial testimony describing the expenses that the trial court ultimately found were unsupported by the evidence. An appellant has the burden of persuasion on appeal and must "point out the perceived errors of the lower court" and provide "an argument containing the contentions and reasons . . . with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." *Allen v. Friel*, 2008 UT 56, ¶¶ 7, 10, 194 P.3d 903 (first omission in original) (citation and internal quotation marks omitted); *see also* Utah R. App. P. 24(a)(9). Without more, Husband has not met his burden of persuasion, and we therefore decline to disturb the trial court's decision.

B.     Tax Consequences of Wife's Business

¶34   For similar reasons, we also decline to disturb the trial court's decision to divide the tax consequences of Wife's business equally between the parties. Wife testified that she opened a deli business in 2004 and operated it at a loss each year from 2007 to 2009. The trial court found that the business had "no value" based on the substantial debt it had accumulated. The court then awarded "the deli business, together with all [its] debt obligations" to Wife, but it also ordered that "the parties be equally liable for any tax, penalty or interest assessed" for any tax year in which they filed a joint income tax return. Husband asked the court to modify its order to insulate him from any tax

liability arising from Wife's business, but the court declined to do so. It explained that because "there were mutual tax benefits derived by the parties during the marriage, any tax liability should also flow to both parties." Presumably, the business's losses enabled the couple to reduce their taxable income each year in which they filed a joint return, so the court determined that Husband, having already enjoyed tax benefits from the business, should also share any financial pain that a subsequent audit might impose.

¶35    Husband disagrees and argues that it is inequitable for him to be "potentially liable for business-related taxes on a business in which he was never involved, had no management or other authority, and which Wife has admitted has substantial potential tax liabilities." "Under the facts of this case," Husband asserts, "the trial court abused its discretion in dividing the tax obligation between the parties, but awarding the business to Wife alone." Husband, however, has not carried his burden of persuasion on appeal.

¶36    "In a divorce proceeding, it is well established that the trial court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Savage v. Savage*, 658 P.2d 1201, 1203 (Utah 1983). Accordingly, we will not disturb a decision adjusting the financial interests of the parties in a divorce action unless the decision "works such a manifest injustice or inequity as to indicate a clear abuse of discretion." *Id.* (emphasis, citation, and internal quotation marks omitted). Here, Husband offers little analysis demonstrating that the court's decision to divide the business's tax liability between the parties was an abuse of discretion. Rather, he simply asserts that the court's ruling was unfair because Wife mismanaged the business, "kept no accounting records," "used business cash for personal expenses, and therefore, she could not vouch for the accuracy of business tax matters." But Husband does not point to any evidence in the record to support those assertions, nor

does he direct us to any authority that is inconsistent with the trial court's analysis. As a result, Husband has not carried his burden of persuasion on appeal, and we will not disturb the trial court's decision. *See Allen*, 2008 UT 56, ¶¶ 7, 10.

### III. Wife's Conduct

¶37    Finally, Husband raises a variety of issues that are related to Wife's extramarital affair. First, he argues that the trial court was obligated to grant his counter-petition for a fault-based divorce because "[n]o showing whatsoever was made of irreconcilability" and "it was only the fact of the adulterous conduct that would provide any basis at all to conclude that the marriage was irretrievably lost." Second, he argues that the trial court ignored Wife's fault in determining the amount and duration of alimony, and he urges us to overrule *Mark v. Mark*, 2009 UT App 374, 223 P.3d 476, a decision that instructed trial courts to do just that until the legislature provided further guidance about how fault should be considered. *See id.* ¶ 20; *see also* Utah Code Ann. § 30-3-5(8)(b) (LexisNexis 2007) (providing that courts "may consider the fault of the parties in determining alimony" without defining fault). Finally, Husband argues that the trial court erred when it concluded that Wife was not cohabiting with Friend.

¶38    We conclude that the trial court did not err in failing to grant Husband's counter-petition for a fault-based divorce. We also conclude that the trial court properly relied on *Mark* and did not err in its determination that there was no cohabitation.

### A.    Husband's Counter-petition

¶39    Wife filed a petition for divorce based on the parties' persistent failure "to reconcile and resolve their differences." Husband filed a counter-petition for divorce, alleging that "[i]rreconcilable differences have arisen between [Wife] and [Husband] which have caused and led to the irretrievable

breakdown of the marriage between the parties[,] rendering the marriage unworkable and subject to dissolution." He also alleged an alternative ground for the divorce "on the basis of [Wife's] adultery." The trial court granted Wife's petition for a divorce based on irreconcilable differences, and in its findings of fact, the court also noted that Wife "admits to adultery as an additional ground for the divorce." The final decree of divorce did not address Husband's alternative claim for a fault-based divorce, concluding simply that Wife "is awarded a divorce from" Husband.

¶40    Husband argues that even though "the trial court made express findings establishing Husband's right to judgment in his favor on the fault basis of adultery," the court nevertheless "refused to enter a judgment in his favor" contrary to rule 54 of the Utah Rules of Civil Procedure. *See generally* Utah R. Civ. P. 54(c)(1) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled . . . ."). He further asserts that there "was no evidentiary basis for a finding of irreconcilable differences, but only for the fault basis of Wife's adultery."

¶41    Husband's argument overlooks the fact that he admitted there was a basis for a divorce based on irreconcilable differences. "An admission of fact in a pleading is a judicial admission and is normally conclusive on the party making it." *Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984). Unless withdrawn or amended, admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 716 (10th Cir. 1993) (citation and internal quotation marks omitted), *modified en banc on other grounds sub nom. Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078 (10th Cir. 1994). In his answer to Wife's petition for divorce, Husband admitted that the parties' differences had "become irreconcilable[,] making continuation of the marriage under the circumstances impossible." And in his counter-petition for

divorce, Husband requested a divorce based on an "irretrievable breakdown of the marriage" that he alleges arose from the parties' "[i]rreconcilable differences." He alleged adultery only as an alternative ground for the divorce. Consequently, Husband's admission by itself provides an evidentiary basis for the court's decision, and having granted a divorce on grounds asserted by both parties, the court had no obligation to rule on Husband's claim for a fault-based divorce that he asserted only in the alternative.[4]

B.      *Mark* and the Relevance of Fault

¶42    The version of Utah Code section 30-3-5(8)(b) in effect during the parties' divorce proceedings allowed trial courts to "consider the fault of the parties in determining alimony." *See* Utah Code Ann. § 30-3-5(8)(b) (LexisNexis 2007). Five months after Wife filed her petition for divorce, we issued a decision in *Mark* instructing trial courts that it is "inappropriate to attach any consequence to the consideration of fault when making an alimony award." 2009 UT App 374, ¶ 20. We noted that the

_____

4. We note in passing that the trial court in this case granted Wife a divorce based on irreconcilable differences, but it did not grant Husband's request for the same relief. While the practical effect of the decree would likely be the same in any event, there is precedent indicating that where both parties request a divorce on the same grounds and the divorce is granted, each party is entitled to a decree of divorce. *See Haumont v. Haumont*, 793 P.2d 421, 427 (Utah Ct. App. 1990) (concluding that "both parties [were] entitled to a decree of divorce" where the husband and the wife had each sought a divorce based on irreconcilable differences, but the trial court "improper[ly]" granted a divorce only to the wife after finding that the husband "was at fault"). But on appeal, Husband has not requested that he be granted a decree of divorce based on irreconcilable differences, so we do not address the issue further.

legislature had "provided no definition of what, exactly, constitutes fault," leading to confusion over whether the statute referred to fault-based grounds for divorce or bad behavior unrelated to the divorce's underlying cause. *Id.* ¶ 18. And we invited the legislature to more "clearly define[] fault in the statute" to resolve those ambiguities. *Id.* ¶ 20. The dissent in *Mark* opined that because the language in section 30-3-5(8)(b) was "broad and generalized," the statute "strongly suggests that the Legislature appreciates the multitude of factual scenarios that arise in divorce cases" and "trusts the courts to flesh out the alimony/fault concept in the course of adjudication of cases over time." *Id.* ¶ 25 (Orme, J., dissenting). Subsequent appellate panels have questioned the reasoning in *Mark* without overruling it, *see Fairbanks v. Fairbanks*, 2010 UT App 31U, para. 5 (McHugh, J., concurring) (noting that the dissent's reasoning in *Mark* is persuasive, but concurring in the majority's reliance on *Mark* based on "principles of horizontal stare decisis"), and noted its potential inconsistency with prior precedent, *see Myers v. Myers*, 2010 UT App 74, ¶ 11 n.3, 231 P.3d 815, *aff'd*, 2011 UT 65, 266 P.3d 806.

¶43    At trial, Husband argued that Wife's adultery "should terminate any right to alimony" and that the trial court could "ignore" *Mark* because the case was inconsistent with prior Utah case law. Evidently, the trial court did not take Husband up on that request and awarded Wife $1,281 per month in alimony. Husband argues that the trial court "committed injustice" by "ignoring the fault basis for terminating this marriage" when it "fashion[ed] an award of alimony," and he urges us to overrule *Mark*. We decline to do so and conclude that the court properly relied on that case.

¶44    "Those asking us to overturn prior precedent have a substantial burden of persuasion." *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994). Horizontal stare decisis requires appellate courts to adhere to their own prior decisions, and that obligation "applies with equal force to courts"—like ours—that are

"comprised of multiple panels." *Id.* at 399 n.3. Each appellate panel must "observe the prior decisions of another." *Id.* Although we have authority to overrule our own precedent in some limited circumstances, we will "not do so lightly"—the challenged decision must be (1) "clearly erroneous" or (2) "conditions [must] have changed so as to render the prior decision inapplicable." *Id.* (citation and internal quotation marks omitted). Consequently, the mere fact that a decision has been criticized by prior panels or that a particular panel disagrees with a prior decision is insufficient by itself to justify departures from our own case law.

¶45    We first note that Husband has not argued that changed circumstances make *Mark* a candidate for reversal, so he must demonstrate that the decision was clearly erroneous.[5] He has not met that "substantial burden of persuasion." *Menzies*, 889 P.2d at 398.

¶46    While the *Mark* decision has been criticized, it is not clearly erroneous. It is settled law in Utah that "[t]he purpose of

---

5. In 2013, the legislature passed H.B. 338, a bill that "allows a court to consider fault when awarding alimony" and defines "fault to include acts that intentionally and knowingly harm or cause substantial harm, physically or financially, to a spouse or the children of the marriage." H.B. 338, ch. 373, sec. 1, § 8(b)–(d), 2013 Utah Laws 1907, 1908 (codified at Utah Code Ann. § 30-3-5(8)(b)–(c) (LexisNexis 2013)). The bill was passed long after the events that gave rise to this appeal, and neither party has argued that H.B. 338 calls into question *Mark*'s continuing validity as to pre-2013 cases or suggested that it is relevant to this appeal. So although the 2013 amendment appears to be a direct response to *Mark*'s invitation for the legislature to more "clearly define[] fault in the statute," 2009 UT App 374, ¶ 20, 223 P.3d 476, we leave for another day the task of determining how the new law affects this line of precedent.

alimony is to provide support" to the recipient spouse "and not to inflict punitive damages" on the payor spouse. *See English v. English*, 565 P.2d 409, 411 (Utah 1977) (citation and internal quotation marks omitted). As early as 1946, the Utah Supreme Court overturned an alimony award that was clearly intended to "compensate [the wife] for her suffering" and "teach [the husband] a lesson." *Foreman v. Foreman*, 176 P.2d 144, 153–54 (Utah 1946). The court noted that "[n]either task is properly within the issues of a divorce case." *Id.* at 153. This approach to alimony differs from the common law rule that "a wife could not obtain alimony when a divorce was granted by reason of her misconduct." *See Alldredge v. Alldredge*, 229 P.2d 681, 684–86 (Utah 1951) (describing the common law rule and Utah's departure from it), *overruled on other grounds by Kiger v. Kiger*, 506 P.2d 441 (Utah 1973). Accordingly, in determining alimony, Utah courts have traditionally considered the recipient spouse's "financial conditions," "needs," and ability "to produce a sufficient income," as well as the payor spouse's "ability . . . to provide support." *English*, 565 P.2d at 411–12; *see also Hendricks v. Hendricks*, 63 P.2d 277, 279 (Utah 1936) ("The amount of alimony is measured by the wife's needs and requirements, considering her station in life, and upon the husband's ability to pay."), *modified on other grounds*, 65 P.2d 642 (Utah 1937). And historically, fault has also been "one of the factors to be considered with all of the others" to determine alimony. *See Christensen v. Christensen*, 444 P.2d 511, 512 (Utah 1968); *see also Riley v. Riley*, 2006 UT App 214, ¶¶ 19–24, 138 P.3d 84 (affirming an alimony award where "the trial court explicitly stated it had considered [the husband's] fault"); *Christiansen v. Christiansen*, 2003 UT App 348U, para. 9 ("Fault may correctly be considered by the trial court without penalizing the party found to be at fault.").

¶47   In 1995, the legislature codified these factors, providing that courts "shall consider" the recipient spouse's financial needs and ability to meet those needs, the payor spouse's ability to pay, and the length of the marriage in determining alimony. *See*

Utah Code Ann. § 30-3-5(7)(a)(i)–(iv) (Michie Supp. 1995). These factors are still part of Utah law today. *Id.* § 30-3-5(8)(a)(i)–(iv) (LexisNexis 2013). The 1995 changes to section 30-3-5 also allowed trial courts to continue to exercise their discretion to "consider the fault of the parties in determining alimony." *See id.* § 30-3-5(7)(b) (Michie Supp. 1995). But nowhere in the 1995 amendments did the legislature repudiate what had become something of an axiom before the statute was passed and has since remained uncontroversial—that the purpose of divorce proceedings "should not be to impose punishment on either party." *See Jesperson v. Jesperson*, 610 P.2d 326, 328 (Utah 1980); *see also Goggin v. Goggin*, 2013 UT 16, ¶ 52, 299 P.3d 1079 (noting that courts do not "have discretion to distribute marital property in a way that is designed to punish a party's contemptuous behavior").

¶48    In *Mark*, we noted the analytical tension involved in allowing courts to consider fault to determine alimony but prohibiting any spousal support obligations that operate as a punishment for misconduct. 2009 UT App 374, ¶ 17, 233 P.3d 476. That is, "if a trial court uses its broad statutory discretion to consider fault in fashioning an alimony award and then, *taking that fault into consideration*, adjusts the alimony award upward or downward, it simply cannot be said that fault was not used to punish or reward either spouse." *Id.* In light of clear Utah law expressing disapproval for punitive alimony awards, "trial courts [were] left in the difficult position of trying to determine what the term 'fault' means, in what context, and what, if any, consequence fault should have on an award of alimony." *Id.* We pointed out that the version of the statute applicable at the time provided "no meaningful guidance" on that issue, *id.* ¶ 18, and we also noted that "consideration of fault is already built into the system on virtually every issue that arises in domestic cases," *id.* ¶ 19.

¶49    We acknowledge that *Mark*'s prohibition on considering fault *at all* in determining alimony seems facially inconsistent

with the statute's clear direction that courts "may consider the fault of the parties in determining alimony." Utah Code Ann. § 30-3-5(8)(b) (LexisNexis 2007). As we have discussed, there is a long line of cases that explicitly take fault into consideration. But the tension between considering fault and avoiding punitive alimony awards existed long before the legislature amended section 30-3-5 in 1995, and nothing in those revisions explicitly resolved that tension. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1363 (2013) ("[W]hen a statute covers an issue previously governed by the common law," courts typically presume that the legislature "intended to retain the substance of the common law." (alteration in original) (citation and internal quotation marks omitted)). So while *Mark* is certainly open to criticism, it can also be read as a reasonable attempt to resolve an analytical problem that has plagued this area of the law for decades—a problem that became less amenable to judicial resolution after the legislature essentially codified it by enacting the 1995 version of section 30-3-5.[6]

¶50    Husband is, of course, correct that the precedent in this area of the law is difficult to reconcile, and at least two members of this court have indicated that they would probably decide *Mark* differently today if given the opportunity to write on a clean slate. *See supra* ¶ 42. But the slate is not clean, and without

---

6. As we have discussed, the 2013 version of the statute appears to be an attempt to more "clearly define fault" and clarify how courts may permissibly consider it when awarding alimony. *See Mark v. Mark*, 2009 UT App 374, ¶ 20, 223 P.3d 476; *see also* Utah Code Ann. § 30-3-5(8)(b)–(c) (LexisNexis 2013) (allowing courts to "consider the fault of the parties" when awarding alimony and providing a definition of fault). Whether the new statute resolves the analytical tension involved in prohibiting punitive alimony awards while also taking fault into account is an issue that is not before us, so we leave that question for another day. *See supra* note 5.

a compelling demonstration that *Mark* was clearly erroneous or that there has been some dramatic change in circumstances, principles of stare decisis require us to refuse Husband's invitation to go back to the drawing board. We therefore conclude that the court properly relied on *Mark* and had no obligation to take into account Wife's adultery in calculating either the amount or duration of alimony.

## C. Cohabitation

¶51 Finally, we also affirm the trial court's conclusion that Wife was not cohabiting with Friend. The trial court found that even though Wife admitted "to having a sexual relationship" with Friend, Wife also testified that "she maintains a separate residency" from him. Wife did not have a key to Friend's home; she paid her own mortgage, insurance, and utility bills; and while she spent most nights at Friend's home when she did not have the children with her, she stayed over "less than fifty percent of the time." The court further found that although Wife and Friend "occasionally share dining and other food expenses" and Friend "previously stored his boat" in Wife's garage, they had "not jointly acquired any assets," and the boat was now stored elsewhere. Husband does not challenge the court's findings of fact, but he argues that the "trial court erred in concluding, based upon these facts, that Wife did not cohabit with [Friend]." Without citation to the record, he asserts that "Wife spent virtually every night with [Friend] at his home," that they "shared expenses," and that they were also contemplating marriage. Coupled with their intimate relationship and the storage of Friend's boat in Wife's garage, Husband maintains, these facts demonstrated "a relationship akin to that between a husband and wife."

¶52 Utah Code section 30-3-5 provides that an alimony award "terminates upon establishment by the party paying alimony that the former spouse is cohabitating with another person." Utah Code Ann. § 30-3-5(10) (LexisNexis 2013). The key question

in analyzing cohabitation is "whether the parties entered into a relationship akin to that generally existing between husband and wife." *Myers v. Myers*, 2011 UT 65, ¶ 22, 266 P.3d 806 (citation and internal quotation marks omitted). While there are no "required elements of cohabitation because there is no single prototype of marriage that all married couples conform to," the "hallmarks" courts look for include whether the parties have "a shared residence, an intimate relationship, and a common household involving shared expenses and shared decisions." *Id.* ¶ 24. In *Haddow v. Haddow*, 707 P.2d 669 (Utah 1985), for example, although the parties had a sexual relationship, the supreme court reversed a cohabitation finding where the man did not have a key to the woman's home, there was no evidence he used her home when she was not there, and he did not contribute any money to the woman's mortgage, insurance, or utility bills. *Id.* at 672–74. The fact that the man had parked his van in the woman's driveway for several months was not sufficient to show cohabitation, particularly in light of evidence that the van was not the man's primary vehicle. *Id.* at 673.

¶53 Here, the trial court's findings of fact are adequate to support its conclusion that Wife and Friend had not established a relationship akin to that of a married couple. The facts that Friend stored a vehicle in Wife's garage at some point, that Wife and Friend shared some dining and food expenses, and that they had an ongoing intimate relationship weighs in favor of finding cohabitation. But, as in *Haddow*, neither party here had a key to the other's residence; Wife paid her own mortgage, insurance, and utility bills; and neither she nor Friend regarded the other's home as their permanent residence. Without any conclusive evidence that Wife and Friend had established a common residence and shared any major household expenses, their sexual relationship and willingness to buy food together simply does not amount to cohabitation as a matter of law and therefore did not require such a determination by the trial court.

CONCLUSION

¶54    We conclude that the trial court's findings of fact are insufficiently detailed to permit appellate review of its decisions awarding Wife alimony, denying Husband's request to retroactively modify his child support payments, and awarding Wife attorney fees. Accordingly, we remand those issues for the entry of additional findings of fact. We affirm the trial court's denial of Husband's request for reimbursement of the children's medical expenses and its decision imposing the tax liability of Wife's business on both parties. Finally, we conclude that the trial court properly relied on *Mark* when it declined to take into account Wife's fault in determining alimony and that the court had no obligation to grant Husband's counter-petition for a fault-based divorce. We also affirm the court's determination that there was no cohabitation.

.                           —————————