Glenn Alvin DEEN, Appellant,

v.

Colleen Gray DEEN, Appellee.

No. 9316.

Court of Appeals of Texas, Amarillo.

March 23, 1982.

Dubuque & Foster, P. C., Louis T. Dubuque, Dumas, for appellant.

Lovell, Lyle, Renfer, Moore & Duvall, P. C., R. A. Renfer, Jr., Dumas, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This suit, initiated by appellee Colleen Gray Deen (hereafter "Colleen") against her former husband, appellant Glenn Alvin Deen (hereafter "Glenn") seeks construction of, and recovery of money allegedly due under, an agreement incident to divorce. We agree with the trial court's interpretation of the agreement and affirm.

In 1977, Colleen and Glenn were divorced from each other. In order to resolve various points in dispute they executed an agreement incident to divorce that was approved and incorporated into the divorce decree by the trial court. Section IV of the agreement, as pertinent here, reads as follows:

### Section IV
### SUPPORT OF WIFE

A. * * * Therefore, in order to discharge completely all obligations arising from the marriage—other than obligations concerning community property and child support—Husband agrees to pay the following sums to [wife] . . . on the terms and conditions now stated: The sum of the greater of $1,000.00 per month or forty percent (40%) of *the earned income of Respondent* [Husband] *as defined by the Internal Revenue Code*, per month

from the date of divorce until they shall cease upon the occurrence of one of the contingencies specified in Section IV C below. Such sums shall be payable directly from Husband to Wife. [Emphasis added.][1]

\* \* \* \* \* \*

The pivotal issue before this court is the meaning of the italicized phrase "earned income of Respondent as defined by the Internal Revenue Code . . . ." Glenn has paid Colleen 40% of his salary in accordance with the agreement, but has refused to pay her 40% of his income from various other sources.

Colleen sued Glenn on the agreement, asking for construction of the phrase, a determination of her rights under the agreement, an accounting, judgment for sums due and unpaid under the agreement, and attorney's fees. Glenn responded with various defensive pleadings controverting the construction advanced by Colleen, asserting an ambiguity in the agreement, and raising other matters not pertinent here. The case was submitted to the trial court on stipulated testimony and the trial court granted the relief sought by Colleen. It awarded her $71,414.00, which it found to be due and unpaid from Glenn's 1978 and 1979 earned income, plus $6,247.50 attorney's fees. The earnings in question came from various partnerships in which Glenn participated.

In his appeal to this court, Glenn presents three points of error. First, he says the phrase "earned income of Respondent as defined by the Internal Revenue Code" is ambiguous. Second, he says the trial court erred in its definition of earned income. Finally, Glenn says the evidence is insufficient to justify the amount awarded by the trial court. We will consider the points in the order stated.

■ This dispute must be resolved within the framework of certain basic principles of contract law. A property settlement agree-

---

1. Because this is a support agreement made by the parties, rather than court ordered alimony, it is not void as a violation of public policy.

*Francis v. Francis*, 412 S.W.2d 29, 33 (Tex. 1967); *Firestone v. Firestone*, 567 S.W.2d 889, 891 (Tex.Civ.App.—Dallas 1978, no writ).

ment incident to a divorce is encouraged by the courts. *Francis v. Francis*, 412 S.W.2d 29, 33 (Tex.1967); *Mikeska v. Mikeska*, 584 S.W.2d 565, 566 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). When such an agreement is executed by the parties and incorporated into the judgment of divorce, it is binding on the parties, *O'Benar v. O'Benar*, 410 S.W.2d 214, 217 (Tex.Civ.App. —Dallas 1968, writ dism'd), and is interpreted under general contract law. *Vickers v. Vickers*, 553 S.W.2d 768, 769–70 (Tex.Civ. App.—Beaumont 1977, no writ); *Wilson v. Woolf*, 274 S.W.2d 154, 158 (Tex.Civ.App.— Ft. Worth 1954, writ ref'd n. r. e.).

■ As with any other contract, the provisions of the agreement will not be modified or set aside, absent consent of the parties, except for fraud, accident or mutual mistake of fact. *Simpson v. Simpson*, 387 S.W.2d 717, 719 (Tex.Civ.App.—Eastland 1965, no writ); *Boyd v. Boyd*, 545 S.W.2d 520, 523 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); and *Eagle Lumber Co. v. Trainham*, 365 S.W.2d 702, 704 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.). Also, when a specific law is expressly referred to in the agreement and incorporated therein by reference, that law, as it exists when the agreement is executed, becomes a part of the agreement as if written therein. *Empire Gas & Fuel Co. v. State*, 121 Tex. 138, 47 S.W.2d 265, 266–67 (1932). *See Estate of Griffin v. Sumner*, 604 S.W.2d 221, 230 (Tex.Civ.App.—San Antonio 1980, writ ref'd n. r. e.).

■ Where, as here, a party is contending that an agreement is ambiguous, that party must first demonstrate that the language in question (1) is of uncertain or doubtful meaning, *Skyland Developers, Inc. v. Sky Harbor Associates*, 586 S.W.2d 564, 568 (Tex.Civ.App.—Corpus Christi 1979, no writ), or (2) subject to more than one reasonable meaning, unresolvable by rules of interpretation. *Universal C.I.T. Credit*

*Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951). If the party so contending can convince the court that one of those factors exists, extrinsic evidence is admissible to assist the court in ascertaining the meaning of the ambiguous language. *Caviness Packing Co., Inc. v. Corbett*, 587 S.W.2d 543, 545–46 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.). If, however, the language can be given a definite legal meaning without resort to extrinsic evidence, it is not ambiguous. *Alba Tool & Supply v. Industrial Contractors*, 585 S.W.2d 662, 664 (Tex.1979). *See generally Sun Oil Company v. Madeley*, 610 S.W.2d 798 (Tex.Civ.App.1981).

■ In this case, we are satisfied the phrase "earned income of Respondent as defined by the Internal Revenue Code" has a definite legal meaning and is not ambiguous. The amount to be paid Colleen is determined by a three-step process. First, the facts pertinent to the nature and source of Glenn's income are ascertained. Second, the various definitions of earned income in the Internal Revenue Code are studied.[2] Third, the definition that fits Glenn's facts is then applied in order to ascertain the earnings that are subject to Colleen's claim.

We recognize, of course, that evidence of Glenn's earnings must be developed in order to determine which definition applies and how much Colleen receives. That evidence is not, however, extrinsic evidence admitted to clarify an ambiguity. It is evidence admitted in order to compute the formula established by the agreement.

Glenn correctly points out that there are several different definitions of earned income in the Code. The essence of his argument is that it is impossible to know which one is to be used; thus, the phrase is ambiguous. Glenn overlooks the fact that the numerous definitions do not exist in a vacuum. Each is expressly designed to apply to the particular set of facts. As discussed

---

2. The provisions of the Internal Revenue Code are laws of the United States of which any Texas court may take judicial notice without the necessity for proof. *Mims v. Swartz*, 37 Tex. 13 (1872); *Wineburgh v. Dallas Poster* *Advertising Co.*, 98 S.W.2d 252, 253 (Tex.Civ. App.—Dallas 1936, no writ); *Thomas v. Linder*, 231 S.W.2d 891, 894 (Tex.Civ.App.—Austin 1950, writ ref'd).

above, the definition to be used depends upon the facts pertinent to Glenn's income. *Vogt v. United States*, 537 F.2d 405, 411–12, 210 Ct.Cl. 246 (1976), relied on by Glenn, is not persuasive, because the definition of earned income it discusses is not applicable in this case. Point of error one is overruled.

Glenn contends, in his second point of error, that the trial court erred in its definition of earned income. In its conclusions of law, the trial court defined earned income as follows:

> 3) The term "earned income" as defined in the Internal Revenue Code and as used in the Agreement Incident to Divorce means:
> 1) Wages, salaries and other employee compensation.
> 2) Net earnings from self-employment including distributive share of partnership profits.
> "Earned income" does not include:
> 1) Gain or loss from sale of capital assets.
> 2) Rents.
> 3) Annuities and pensions.
> 4) Partnership retirement.
> 5) Cash dividends, stock dividends and other corporate distributions of earnings or profits rather than compensation for personal services rendered.

The definition of earned income chosen by the trial court is essentially the definition contained in 26 U.S.C.S. § 43 (1974). We are satisfied it is the definition that applies to Glenn's earnings under the record before us. The § 43 definition is used under the Code to figure tax credits when determining the tax liability of a taxpayer for normal income taxes. As a practical matter, § 43 is the general earned income definition. The other definitions apply to special or exceptional circumstances,[3] and

there is no evidence in the record before us to activate those definitions.

Glenn argues that the trial court failed to consider various limitations on earned income set out in 26 U.S.C.S. § 401(c)(2)(A)(i) (1974), and 26 U.S.C.S. § 911(b) (1974). However, the definition of earned income in § 401 is used in reference to pension, profit sharing and stock bonus plans. The definition in § 911(b), as it read when the parties signed the agreement, applies to earned income from sources outside the United States. As noted, there is no evidence in the record that either of those sections has any application to Glenn's income. Point of error two is overruled.

By his third point, Glenn contends that the evidence is insufficient to justify the amount awarded by the trial court. In resolving this point, we must review all of the evidence in order to ascertain whether the evidence supporting the finding is so weak or the evidence to the contrary so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

After conducting the appropriate review, we are satisfied the evidence is sufficient. Under the stipulated evidence, Glenn's accountant applied the definition of earned income selected by the trial court to Glenn's earnings and testified to the income that would be earned income under the definition. The trial court used that uncontradicted testimony to arrive at the amount owed by Glenn. Thus, there is ample evidentiary support for the amount found by the trial court. Point of error three is overruled.

The judgment of the trial court is affirmed.

---

3. Other Sections of the Internal Revenue Code (26 U.S.C.S.) dealing with "earned income" include:

§ 37 (Supp.1981)—Earned Income Credits for the elderly;
§ 44 (Supp.1981)—expenses for household and dependent care—services necessary for gainful employment;

§ 401 (1974)—income from pension, profit-sharing and stock bonus plans;
§ 404 (1974)—earned income for trust or annuity plan earnings;
§ 911(b) (1974)—earned income earned outside the United States; and
§ 913 (Supp.1981)—deduction for certain expenses of living abroad.