**2017 UT App 127**

## THE UTAH COURT OF APPEALS

MORIAH LEE CHESLEY,
Appellee,
*v.*
BENJAMIN WADE CHESLEY,
Appellant.

Opinion
No. 20160193-CA
Filed July 28, 2017

Third District Court, Tooele Department
The Honorable Robert W. Adkins
No. 144300327

David Pedrazas, Attorney for Appellant

Mary C. Corporon, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES STEPHEN L. ROTH and JILL M. POHLMAN concurred.

CHRISTIANSEN, Judge:

¶1      Benjamin Wade Chesley appeals from a divorce decree,
challenging the trial court's alimony award in favor of Moriah
Lee Chesley.[1] Because we cannot discern from the record before
us whether the trial court properly calculated alimony, we
vacate the alimony award and remand for the entry of more
complete findings.

---

1. Because the parties still share a last name, we refer to them by
their first names for clarity, with no disrespect intended by the
apparent informality. *See Earhart v. Earhart*, 2015 UT App
308, ¶ 2 n.1, 365 P.3d 719.

¶2    Benjamin and Moriah married in August 2007.[2] They had two children together. Moriah filed for divorce in July 2014.

¶3    In October 2014, Moriah filed a motion for temporary alimony, accompanied by an affidavit in support of her motion. In her affidavit, Moriah claimed monthly expenses of $3,179.34 and a monthly income of $2,249.67, resulting in a shortfall of $929.67. In November 2014, after a hearing on the matter, a commissioner entered an order requiring Benjamin to pay Moriah $900 per month in temporary alimony. Benjamin failed to pay the temporary alimony.

¶4    Subsequently, during a day-long bench trial, the trial court considered, among other things, whether Benjamin should be required to pay permanent alimony to Moriah and in what amount. The court heard evidence that Moriah was not employed during the parties' marriage "[b]ecause [she] spent all [of her] time at home with the kids." Moriah testified that she was currently a full-time student and that she was getting a degree so that she could "double [her] pay." She also explained that she was currently working part time instead of full time because she "wasn't hired to work full time, and [did] not have the time going to school and taking care of the kids." Moriah's updated financial declaration indicated that she had a gross monthly income of $2,800 and monthly expenses of $3,933, which included $1,200 per month in child care expenses. In addition, Moriah testified that she had been receiving roughly $1,700 in government subsidies per month and around $400 per month from her father to help with bills.

---

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Kidd v. Kidd*, 2014 UT App 26, ¶ 2 n.1, 321 P.3d 200 (citation and internal quotation marks omitted).

¶5 Benjamin testified that he earned $31.64 per hour and that his monthly income varied depending on how much overtime he worked. He testified that his total income in 2014 was around $94,000. He further testified that his monthly expenses were approximately $5,400, which included his $1,019 monthly child-support obligation.

¶6 For purposes of its alimony determination, the court imputed to Moriah income of $13 per hour for 40 hours per week, or $2,253 per month. In addition, the court found that Moriah's income included $318 per month from her first husband for child support, and $1,019 per month from Benjamin for child support, bringing her total monthly income to $3,590. The court determined that Benjamin's income "has been going up over the years" and that if it projected Benjamin's income for 2015, "based on what [he'd] earned thus far, it would be above $100,000 a year." Nevertheless, the court set Benjamin's monthly income at $6,500 ($78,000 annually), observing that "that is very conservative based on his history that his income has gone up."

¶7 The court concluded that, "under all of the circumstances in this case," Moriah was entitled to an award of alimony and awarded her alimony in the amount of $900 per month for 97 months, the length of the parties' marriage.[3] The court observed that Moriah had qualified for the level of government subsidies that she had been receiving only because she "basically had no income," and that the benefits she had been receiving were "going to change substantially, and as to the child care, . . . it may be unfortunate for the parties that the State won't be paying all of that that they've paid." In addition, the court noted that Moriah "needs a better job" and that she "needs to go back to

---

3. The court also entered judgment in favor of Moriah for $9,585 in past-due alimony (10 months of temporary alimony at $900 per month, less $315 for the value of Benjamin's personal property that Moriah had sold).

school to get a better job." The court further observed that Moriah had supported Benjamin "throughout the marriage and his employment, in improving his employment, and that [Moriah] needs to be able to have greater earning capacity than she presently has." The court clarified that, although it had imputed income to Moriah as though she were working full time, it was unsure that she would actually be able to work full time while going to school. The court also noted that $900 per month would not equalize the parties' incomes and that Benjamin was "going to have considerably more income" than Moriah.

¶8     In response to the trial court's ruling, Benjamin filed a motion to amend the trial court's findings of fact and for a new trial pursuant to rules 52(b) and 59(a)(6) of the Utah Rules of Civil Procedure, arguing that "the Court made no finding as to the needs of [Moriah] in this matter." Benjamin observed that Moriah's updated financial declaration indicated that she had monthly expenses of $3,933 and that the court had found Moriah's monthly income to be $3,590. Benjamin contended that Moriah's monthly expenses included $1,200 per month in child care expenses "of which [he] was ordered to pay one-half." Thus, according to Benjamin, Moriah's monthly expenses should have been reduced to $3,333 per month. Benjamin also argued that "the Court failed to make any actual Findings of the need of [Moriah]" and that Moriah "failed to demonstrate to the Court her need of $900 per month in alimony." Benjamin requested that alimony be terminated "as [Moriah's] income exceed[s] her month[ly] expenses" or, alternatively, that "the Court make additional findings as to the need of [Moriah] in this matter based upon the evidence submitted before [the] Court." The trial court denied the motion, stating that "[t]he Court believes that the evidence at trial clearly supported [Moriah's] need for alimony, and that the amount awarded was correct."

¶9     On appeal, Benjamin challenges the trial court's alimony award. More specifically, he contends that the trial court failed

to properly consider and determine Moriah's needs in awarding her alimony. "Trial courts have considerable discretion in determining alimony and determinations of alimony will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Boyer v. Boyer*, 2011 UT App 141, ¶ 9, 259 P.3d 1063 (brackets, ellipsis, citation, and internal quotation marks omitted). "[W]here a trial court fails to enter specific findings on the needs and condition of the recipient spouse, making effective review of the alimony award impossible, that omission is an abuse of discretion." *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 10, 80 P.3d 153.

¶10    "The purposes of [an initial alimony award] are (1) to get the parties as close as possible to the same standard of living that existed during the marriage, (2) to equalize the standards of living of each party, and (3) to prevent the recipient spouse from becoming a public charge." *Roberts v. Roberts*, 2014 UT App 211, ¶ 14, 335 P.3d 378 (citation and internal quotation marks omitted). In determining the amount and duration of alimony, trial courts consider at least the following factors:

> (i) the financial condition and needs of the recipient spouse;
>
> (ii) the recipient's earning capacity or ability to produce income;
>
> (iii) the ability of the payor spouse to provide support;
>
> (iv) the length of the marriage;
>
> (v) whether the recipient spouse has custody of minor children requiring support;
>
> (vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and

(vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or enabling the payor spouse to attend school during the marriage.

Utah Code Ann. § 30-3-5(8)(a) (LexisNexis 2013).

¶11   In considering these factors, a trial court is required to "make adequate findings on all material issues of alimony to reveal the reasoning followed in making the award." *Taft v. Taft*, 2016 UT App 135, ¶ 14, 379 P.3d 890 (citation and internal quotation marks omitted); *see also Roberts*, 2014 UT App 211, ¶ 12 ("[A] trial court's analysis of each factor must contain factual findings with enough detail to permit meaningful appellate review of its decision."). Findings are adequate only when they are sufficiently detailed and include enough subsidiary facts to disclose the steps by which the trial court reached its ultimate conclusion on each factual issue. *Taft*, 2016 UT App 135, ¶ 14.

¶12   Benjamin contends that the trial court failed to make adequate findings as to Moriah's needs in awarding alimony. Moriah, on the other hand, contends that "the [trial] court analyzed the facts under the applicable alimony factors, [and made] sufficient findings to properly award alimony to [her]."

¶13   In awarding Moriah alimony, the trial court found that Benjamin earned $6,500 per month and that, based on his income, he had the ability to pay alimony. The court found that Moriah had a monthly income of $3,590, which included $2,253 of imputed employment income and $1,337 in child support from Benjamin and Moriah's first husband. The court further found that Moriah needed a better job; that she needed to go back to school to get a better job; and that she had supported Benjamin "throughout the marriage and his employment, in improving his employment, and that [Moriah] needs to be able to have greater earning capacity than she presently has." The court observed that Benjamin was "going to have considerably

more income" than Moriah. The court was also skeptical that Moriah, who had custody of the parties' two children, would be able to work full time while attending school. In addition, the court found that the benefits Moriah had been receiving from the government were going to "change substantially" because of the court's alimony award.

¶14    Based on the foregoing, we agree with Moriah that the trial court properly considered several of the relevant statutory factors, including Moriah's earning capacity, the length of the parties' marriage, and the fact that Moriah had custody of the parties' two children.[4] *See* Utah Code Ann. § 30-3-5(8)(a)(ii), (iv), (v). However, we ultimately conclude that, in considering Moriah's needs, the trial court failed to make sufficiently detailed findings regarding her demonstrated financial need. *See Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 13, 80 P.3d 153 ("The absence of findings of fact is a fundamental defect that makes it impossible to review the issues that were briefed without invading the trial court's fact-finding domain." (citation and internal quotation marks omitted)). Namely, the court failed to make any findings regarding Moriah's monthly expenses and to specifically identify what it relied on in determining that $900 was a reasonable amount of alimony. Indeed, even after reviewing the record, we cannot determine how the $900 amount was calculated: Moriah's updated financial declaration indicated that she had monthly expenses of $3,933, and the trial court found that Moriah had a monthly income of $3,590, a

---

4. Although the trial court found that Benjamin had the ability to provide support, *see* Utah Code Ann. § 30-3-5(8)(a)(iii) (LexisNexis 2013), the court did not make any findings regarding Benjamin's monthly expenses. Benjamin testified that his monthly expenses were approximately $5,400, which included his $1,019 per month child-support obligation.

difference of only $343.[5] *See generally Jensen v. Jensen*, 2008 UT App 392, ¶ 13, 197 P.3d 117 (observing that "regardless of the payor spouse's ability to pay more, the recipient spouse's demonstrated need must constitute the maximum permissible alimony award (brackets, ellipsis, citation, and internal quotation marks omitted)). Although the court generally discussed Moriah's need for more schooling and a better job as justification for its alimony award, the court failed to, for example, make any detailed findings regarding the cost of tuition or retraining. Given the lack of clarity in the findings and the record, we are simply unable to determine whether the $900 alimony award was proper.

¶15  We vacate the trial court's alimony award and remand for the entry of more complete findings.

─────────

─────────

5. On appeal, Benjamin also repeats the argument from his motion to amend—that he was ordered to pay half of Moriah's child care expenses and that her monthly expenses should therefore have been reduced by $600 (half of $1,200) to equal $3,333 per month, "which is less than her income of $3590." *Supra* ¶ 8. Given our resolution of this appeal, we decline to address this issue. Any determination regarding the parties' child care expenses is more appropriately left to the trial court to decide on remand.