**2022 UT App 65**

## THE UTAH COURT OF APPEALS

VICKI BECKHAM,
Appellee,
*v.*
RANDALL BECKHAM,
Appellant.

Opinion
No. 20200935-CA
Filed May 19, 2022

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 194901020

Ben W. Lieberman, Attorney for Appellant

Ryan A. Rudd and Nicholas S. Nielsen, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1      When Vicki and Randall Beckham came before the district
court for a bench trial on a divorce petition, Vicki[1] asked the court
to order that she be a named beneficiary under one of the then-
existing term life insurance policies on Randall. The court denied
this request, a determination with which neither party takes issue.
Despite both parties acknowledging that the policy had no value,
however, and while expressly noting that the policy was not
presented in evidence, the district court ordered Randall to
reimburse Vicki the premiums she had paid for this "asset" for

_____

1. Our practice is to refer to parties by their first names when they
share a last name.

several years to the tune of $40,000. Randall appeals, claiming the district court erred in this award. We agree and reverse.

## BACKGROUND[2]

¶2 During the divorce proceeding, Vicki and Randall disputed how two term life insurance policies on Randall's life should be treated. Vicki asserted that the court should award her a beneficiary interest in one of the policies. In ruling on the matter, the district court noted that the parties had failed to provide the court "with the policies at issue" and that it was "unclear whether these term life insurance policies were renewable by year, or after a number of years, or ended upon Randall's death, or were terminated in the event of a divorce." The court also stated that "Vicki's counsel argued that they did not receive the policy in discovery," and citing rule 37 of the Utah Rules of Civil Procedure, the court opined that "if that [was] the case, that issue could have and should have been resolved through the appropriate pretrial procedure." *See* Utah R. Civ. P. 37(a)(1)(E) ("A party . . . may request that the judge enter an order . . . compelling discovery from a party who fails to make full and complete discovery.").

¶3 Although the court determined that it "*may* award a life insurance beneficiary interest to a spouse upon divorce, under general principles of law concerning the apportionment of marital assets," it declined to do so, reasoning that Vicki did not have a financial need for the insurance benefits, that the parties never reached an understanding regarding the apportionment of the life insurance policies, and that there was "no reason to perpetuate a

---

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Chesley v. Chesley*, 2017 UT App 127, ¶ 2 n.2, 402 P.3d 65 (cleaned up).

relationship between" the parties by granting Vicki a beneficiary interest in a policy on Randall's life. Accordingly, the court concluded that the policies would "remain with Randall" and that he would "continue to control the beneficiary designation going forward."

¶4     However, the court found that the parties had treated the "two policies as marital assets during the marriage," that each party had "spent a significant amount on annual premiums," that the "policies were clearly part of the parties' future planning and provided a benefit to them," and that the "evidence was clear that each party used their own funds to pay for the respective policies."

¶5     Accordingly, the court determined that Vicki should be reimbursed for her contribution to the premiums of one of the policies:

> [I]n the interest of fairness and equity, Vicki should be awarded $40,000 from Randall to reimburse her for the annual premiums she paid for the policy over the past eight years. The testimony at trial was very clear that each party used their own funds to pay for the respective policies. Thus, Vicki contributed to an asset that will remain with Randall; it is thus fair and equitable for him to reimburse her for the amounts she paid—amounts that have maintained the policy and allowed Randall to perpetuate that [p]olicy on behalf of his newly named beneficiaries.

Randall appeals, asserting that the district court should not have ordered reimbursement of premiums paid during the marriage.

ISSUE AND STANDARDS OF REVIEW

¶6     Randall argues that the district court erred "in invoking its equitable powers to order [him] to reimburse [Vicki] for term life insurance policy premiums paid during the marriage." "A district court has considerable discretion considering property division in a divorce proceeding, thus its actions enjoy a presumption of validity. We will disturb the district court's division only if there is a misunderstanding or misapplication of the law indicating an abuse of discretion." *Johnson v. Johnson*, 2014 UT 21, ¶ 23, 330 P.3d 704 (cleaned up). And "[w]hen a district court fashions an equitable remedy, we review it to determine whether the district court abused its discretion." *Collard v. Nagle Constr., Inc.*, 2006 UT 72, ¶ 13, 149 P.3d 348; *accord Kartchner v. Kartchner*, 2014 UT App 195, ¶ 14, 334 P.3d 1.

ANALYSIS

¶7     In a divorce proceeding, a district court is empowered to enter "equitable orders relating to the children, property, debts or obligations, and parties." *See* Utah Code Ann. § 30-3-5(1) (LexisNexis Supp. 2021). Here, the district court characterized the life insurance policy as a marital asset. Citing Utah Code section 30-3-5, the court noted its authority to divide marital assets and indicated that the parties had "treated" the policy as a "marital asset[] during their marriage" and that "Vicki contributed to an asset that will remain with Randall."

¶8     The court explicitly acknowledged that it did not have access to the life insurance policies because the parties did not provide them to the court.[3] Given this lacuna, the court

---

3. Insofar as Vicki attempts to cast the absence of the insurance policy as a failure of Randall to disclose it, we note that Vicki had

(continued…)

acknowledged that it was "unclear whether these term life insurance policies were renewable by year, or after a number of years, or ended upon Randall's death, or were terminated in the event of a divorce." But the court also noted that Vicki "could have and should have" resolved the lack of production "through the appropriate pretrial procedure," presumably a statement of discovery issues seeking to compel discovery. *See* Utah R. Civ. P. 37(a)(1)(E).

¶9    Given the court's acknowledgment that it was unaware of the nature of the policy, it follows that it was equally unaware whether the policy was still in effect or if it had cash value. Indeed, Vicki took the position at trial that the insurance policy had no value: "[T]hese . . . term life insurance policies . . . don't have value. It's contingent upon an act." And she explicitly stated that the policy had no "cash value" and was limited to "[j]ust the death benefit." Randall also took the position that the policy had "no value." Neither the district court's findings of fact and conclusions of law nor the parties' briefs on appeal point to any record basis on which to base a conclusion that the insurance policy retained

---

the burden of producing evidence of the provisions of the policy in question. After Randall offered testimony of the policy's cash value—testimony we note that Vicki appeared to agree with at trial when she characterized the policy as having no "value" apart from its value contingent on Randall's death, *see infra* ¶ 9—Vicki had the burden of offering evidence of an alternative valuation. *See Argyle v. Argyle*, 688 P.2d 468, 470–71 (Utah 1984) (stating that if a party asserts that an asset should be valued by a different measure, then "the burden of offering further evidence on alternative methods of valuation" falls on that party); *accord Beesley v. Beesley*, 2003 UT App 202U, para. 2.

any value. Instead, all the value related to the policy—as far as the record indicates—was consumed during the marriage.[4]

¶10     Accordingly, Vicki was not entitled to reimbursement for the premiums for the simple reason that either she or the marital estate received the value—in the form of mitigating the risk in the event of Randall's death—of the premiums she paid. Short of collecting on a claim, mitigation of risk is generally the very nature of the benefit one receives from insurance. Vicki may indeed be entitled to reimbursement if the premiums had enhanced the value of Randall's estate to her exclusion. But on the record before us, the payment of the insurance premiums did not enrich Randall such that he continued to enjoy—to the exclusion of Vicki—the benefit of the premiums after the divorce. Or put another way, there is no record evidence that Randall "is retaining some sort of good purchased with the money" spent on the life insurance premiums. *See In re Marriage of Fluent*, No. 16-1321, 2017

---

4. In a term life insurance policy,

> [e]ach premium payment gives rise to an enforceable contractual right of coverage for an additional period of time. As premiums are paid over the life of the policy, distinct property interests in coverage for various periods of time arise. Of those distinct property interests, only one is worth anything in hindsight: coverage for the term during which the insured dies.

*In re Marriage of Burwell*, 164 Cal. Rptr. 3d 702, 713 (Cal. Ct. App. 2013). "Prior terms of coverage only lack value in hindsight (i.e., when it is certain the contingency has failed). Prospectively, all coverage terms have at least expected value." *Id.* at 713 n.12. Thus, here the policy had no value in the sense that the premium coverage periods had expired without the contingency occurring, and these are the very terms for which Vicki received reimbursement.

WL 2461601, at *3 (Iowa Ct. App. June 7, 2017).[5] Rather, the only conclusion that the sparse evidence could sustain is that the "benefit" of the insurance premiums was received by Vicki during the corresponding terms of life insurance coverage. And this benefit consisted of protection from the risk associated with Randall's potential death during each of the paid terms of the policy—a benefit that was consumed in each term. But after each paid term lapsed, Randall did not retain some benefit from the premiums—or at least there is no record evidence of a retained benefit. Thus, the premiums were not reimbursable to Vicki because she—or the marital estate—had already received the value of those premiums in the coverage the insurance policy provided on Randall's life during the marriage.

¶11 Expressed differently, the premiums were a paid-for resource that had been consumed—like many household expenditures—during the marriage. And like the money paid for any other proper living expense incurred during a marriage, the money paid for the insurance premiums was not reimbursable upon divorce because the value of the expense associated with that item—in this case, assurance against risk provided by insurance premiums—was used up during the marriage. *See Heckler v. Heckler*, No. FA040084101S, 2005 WL 529940, at *1–2 (Conn. Super. Ct. Jan. 27, 2005) (denying, in a divorce proceeding, a husband's request that his former wife reimburse him for

---

5. It is unclear how the district court found that Randall benefited from the payment of premiums by allowing him to "perpetuate" the policy for "his newly named beneficiaries." At best, this benefit identified by the court seems speculative because the court had explicitly stated that it did not have access to the policies and that it was "unclear whether these term life insurance policies were renewable by year, or after a number of years, or ended upon Randall's death, or were terminated in the event of a divorce."

"certain living expenses he paid on the wife's behalf during the marriage"); *see also Czepiel v. Allen*, No. FA 9886060, 1999 WL 99097, at *1 (Conn. Super. Ct. Feb. 16, 1999) ("The court does not allow reimbursement for telephone bill expenses or other household expenses [that] were joint undertakings of their family . . . ."). The insurance premiums Vicki paid—even if they did proceed from her own earnings—were akin to the living expenses that are "part and parcel" of the daily marital undertaking. *See Czepiel*, 1999 WL 99097, at *2. As such, they were not reimbursable to her upon divorce as she had already received the value she bargained for in voluntarily assuming the expense of the premiums.

¶12    Thus, the expenditures for the insurance premiums fell into the category of normal living expenses voluntarily paid from marital assets, and they were not subject to reimbursement because they had been entirely exhausted and consumed in paying for a marital expense, namely, buying life insurance for Randall—from which Vicki would have benefited had Randall died during the term of the policy. *See Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988) ("[I]n Utah, trial courts making 'equitable' property division pursuant to section 30-3-5 should . . . generally award property acquired by one spouse by gift and inheritance during the marriage (or property acquired in exchange thereof) to that spouse, together with any appreciation or enhancement of its value, unless . . . *the property has been consumed* . . . ." (emphasis added)); *see also In re Marriage of Rolfe*, 699 P.2d 79, 84 (Mont. 1985) (noting that the district court "erred in returning the value of" certain prenuptial property that had "long since been consumed" during the course of a fifteen-year marriage); *In re Marriage of Fluent*, 2017 WL 2461601, at *3 (determining that it was "inequitable" to require a wife to reimburse her former husband $74,000 of his own funds that he had voluntarily used during the marriage "to maintain the parties' basic standard of living" and "for the benefit of both

himself and his family, without providing any accounting for these expenditures or identifying any asset (beyond the marital home) into which the monies were allegedly spent" (cleaned up)).

¶13 Accordingly, the district court exceeded its discretion in ordering reimbursement where there was no evidence that Randall continued to benefit after the divorce from the previous payments of the premiums.

CONCLUSION

¶14 Because Vicki had already received the benefit of the insurance premiums she paid, we conclude that the district court exceeded its discretion in ordering Randall to reimburse Vicki $40,000 for the premiums.

¶15 Reversed and remanded.[6]

_____

6. The court ordered Randall to pay Vicki a cash payment of $68,750 plus any gains realized from non-retirement accounts and IRAs. This amount consisted of equalizing payments of $23,658.50 for non-retirement assets, $2,913 for IRAs, $1,000 for gains on a non-retirement account, $1,250 for a half-interest in a burial plot, and $40,000 for the life insurance premium reimbursement. We note the sum of these values is $68,821.50, which is $71.50 more than the court's addition yielded. On remand, the court should resolve this discrepancy.