2023 UT App 11

# THE UTAH COURT OF APPEALS

DAVID WELLMAN,
Appellee,
*v.*
KRISTIN KAWASAKI,
Appellant.

Opinion
No. 20210265-CA
Filed February 2, 2023

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 174402919

Mary Deiss Brown, Attorney for Appellant

Eric M. Swinyard and Keith L. Johnson,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

HARRIS, Judge:

¶1 Kristin Kawasaki appeals various aspects of a comprehensive set of rulings issued following a two-day divorce trial and post-trial proceedings; her chief complaint relates to the trial court's decision not to award her alimony. For the reasons discussed below, we affirm the court's orders.

## BACKGROUND

¶2 David Wellman and Kristin Kawasaki married in 1999 and have three children together, two of whom were minors at the time of trial. For most of their marriage, Kawasaki did not work

outside the home but instead cared for the children full-time. By the time of trial, however, Kawasaki was working full-time as a receptionist, earning $3,667 per month; Wellman, an engineer, was earning $10,833 monthly.

¶3　In November 2017, Wellman filed for divorce. Some months later, the trial court entered temporary orders, based partially on stipulation, that made Kawasaki the primary physical custodian of the minor children, and that required Wellman to pay both $2,182 per month in child support as well as, in lieu of alimony, the mortgage payment on the marital house (in the amount of $2,836 per month). Additionally, the court awarded "the temporary exclusive use and possession of" the parties' marital house to Kawasaki.

¶4　In the three years between their separation and their eventual divorce trial, the parties' finances and daily lives remained enmeshed due to Wellman's changing employment and living situation. Despite the fact that Kawasaki had been awarded exclusive use of the marital house in the temporary orders, Wellman lived in the basement of the house off and on in the years leading up to trial. Wellman paid the mortgage in many of the months, but missed those payments in others, and had stopped making those payments altogether by the time of trial. And despite being ordered to make child support payments, Wellman never made a single such payment to Kawasaki prior to trial, opting instead to pay many of her bills directly or to buy groceries for the household while he was living in the marital house.

¶5　Eventually, the case proceeded to a bench trial, which was held—virtually, through a videoconference platform—over two days in late November and early December 2020. During the trial, the court heard testimony from Wellman and Kawasaki as well as several other witnesses. At the trial's outset, before testimony began, Wellman's counsel alerted the court that Kawasaki had failed to timely produce any financial documents (e.g., bank or

credit card statements, copies of bills) to support her claim for alimony, despite the fact that the court had ordered both parties to turn over to the other side a year's worth of bank statements prior to trial. In addition, while Kawasaki had submitted a financial declaration in 2017, at the outset of the litigation, for use during the temporary orders hearing, she had never updated that declaration. Wellman's counsel asserted that, under applicable law, Kawasaki's failure to provide documentation to support her alimony claim "operates as an effective bar to [Kawasaki's] request for alimony." Kawasaki's counsel attempted to remedy the situation by offering to have Kawasaki read a printout of her most current (yet undisclosed) bank statement into the record, but the court refused to allow that, explaining that it would not be "appropriate" for Kawasaki to use evidence at trial that had not been timely disclosed. But the court did not view Kawasaki's failure to produce an updated financial declaration or supporting financial documents as a complete bar to her alimony claim; indeed, the court stated that the parties "can address alimony with documents that are already in the record," and later allowed both parties to offer testimony regarding certain aspects of Kawasaki's alimony claim.

¶6    During her trial testimony, Kawasaki provided few concrete financial details; in particular, she made no attempt to tie her testimony to any previously filed financial declaration, and she did not submit any such declaration for the court's consideration at trial. The only specific dollar amounts Kawasaki testified about were the amounts Wellman was ordered to pay in connection with the temporary orders and the wage she earned when she later obtained employment. She testified that, at the time of trial, her net income each month was $2,800 but that, due to expenses, "most months [she goes] into the negative" and has to rely on her "overdraft." However, she offered no concrete expense numbers to substantiate this assertion. She offered her belief that an apartment in her area suitable for her and the

children would cost "about $2,000," but did not know what the other expenses associated with such an apartment would be.

¶7     At one point, Kawasaki's counsel even acknowledged that she was "having trouble establishing [her] client's needs . . . because of disclosure problems," but asserted that "there are ways of establishing [Kawasaki's] needs by establishing [Wellman's] needs." To this end, counsel attempted to draw on figures Wellman had put together before trial and to press him on how much is "enough for a single person to live with three children." But counsel did not question Wellman about the line-item expenses on his financial declarations, and did not submit any of those declarations for the court's consideration. Wellman did admit, however, in response to a general question about how much it would "cost to live with three kids," that "$1,000 to $1,500 [monthly] for daily activities and food" was not "unreasonable."

¶8     After considering all of the evidence presented, and after taking into account the closing arguments from the attorneys, the court took the matter under advisement, and later issued a written ruling. In that ruling, the court awarded Kawasaki sole physical custody of the minor children, allowing Wellman parent-time pursuant to Utah Code section 30-3-35. The court ordered Wellman to pay Kawasaki $1,578 per month in child support, calculated by using the sole custody worksheet and assessing Wellman's monthly gross income at $10,833 and Kawasaki's at $3,667. The court also ordered Wellman to pay Kawasaki $76,370 in child support arrears, in light of the fact that Wellman had not made any direct child support payments pursuant to the temporary order. The court awarded title of the marital house to Wellman, but ordered that the equity in the house be divided equally within one year, either through a sale or a refinance. With regard to all other marital debts, including debt from a loan taken out during the marriage on a Thunderbird vehicle the parties had purchased during the marriage, the court ordered that the parties "be equally responsible for" them.

¶9 With regard to alimony, however, the court declined Kawasaki's request in its entirety. The court noted that the party requesting alimony bears the burden to establish entitlement to it, including the burden of establishing that party's financial need. The court found that Kawasaki "did not present any bank statements whatsoever, nor did she submit a financial declaration or any documentary evidence regarding her income, expenses, or debts." And the court found that Kawasaki's testimony about her financial need "was inconsistent and missing critical information" and was not enough, in the absence of any documentary evidence, to "persuade the Court that alimony should continue."

¶10 After the ruling, Kawasaki filed a post-trial motion, chiefly to ask the court to order either (a) that the marital house be sold right away rather than within one year, or (b) that Kawasaki be allowed possession of it until the sale or refinance. Among other requests, Kawasaki also asked the court to amend its order so that she would not have to share in paying off the debt relating to the Thunderbird, asserting that Wellman had gifted the car to her and then later destroyed it. But Kawasaki did not ask the court to amend its alimony ruling. Following a hearing on the motion, the court reiterated that Kawasaki was liable for her share of the Thunderbird debt because "the debt was attributable to the parties' IRS debt," which was a joint debt, and the court declined Kawasaki's request to materially amend its order regarding the marital house.

ISSUE AND STANDARD OF REVIEW

¶11 Kawasaki now appeals, and asks us to review the trial court's decision not to award her any alimony.[1] "We review a

---

1. In her brief, Kawasaki also challenges the trial court's failure "to compensate [her] for Wellman's post-separation destruction of

(continued…)

court's alimony determination for an abuse of discretion," *Fox v. Fox*, 2022 UT App 88, ¶ 11, 515 P.3d 481 (quotation simplified), and "as long as the court exercises its discretion within the bounds and under the standards our supreme court has set and so long as the trial court has supported its decision with adequate findings and conclusions," we "will not disturb its ruling on alimony," *Miner v. Miner*, 2021 UT App 77, ¶ 11, 496 P.3d 242 (quotation simplified).

## ANALYSIS

¶12     "Under Utah law, the primary purposes of alimony are: (1) to get the parties as close as possible to the same standard of living that existed during the marriage; (2) to equalize the standards of living of each party; and (3) to prevent the recipient spouse from becoming a public charge." *Miner*, 2021 UT App 77, ¶ 14 (quotation simplified). "The core function of alimony is therefore

---

her separate property, the Thunderbird." We agree with Wellman, however, that this precise issue was not properly presented to the trial court and is therefore unpreserved. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue."). At trial, the Thunderbird was discussed only as a negative asset, due to the loan the parties had taken out on the vehicle to pay marital debts. The only question the parties put before the court, as concerned the Thunderbird, was which of them (or both) should bear the responsibility for paying off the debts associated with the vehicle. Kawasaki did not make an argument that the Thunderbird had any positive equity, let alone an argument that any such value should be awarded to her as her separate property. Consequently, Kawasaki's current claim to that effect, here on appeal, is not preserved for our review, and we do not discuss it further.

economic," and "regardless of the payor spouse's ability to pay more, the recipient spouse's demonstrated need must constitute the maximum permissible alimony award." *Roberts v. Roberts*, 2014 UT App 211, ¶ 14, 335 P.3d 378 (quotation simplified).

¶13   In evaluating a party's alimony claim, "courts must consider the statutory alimony factors," which include "the financial condition and needs of the recipient spouse, the recipient's earning capacity, and the ability of the payor spouse to provide support." *Fox*, 2022 UT App 88, ¶ 20 (quotation simplified). These three factors are often called the "*Jones* factors" because they date back to *Jones v. Jones*, 700 P.2d 1072 (Utah 1985); they have since been codified in Utah Code section 30-3-5(10)(a)(i)–(iii), and they remain the first three factors of a "multi-factor inquiry" that governs a court's alimony determination. *See Miner*, 2021 UT App 77, ¶ 16.

¶14   "A party seeking alimony bears the burden of demonstrating to the court that the *Jones* factors support an award of alimony." *Dahl v. Dahl*, 2015 UT 79, ¶ 95, 459 P.3d 276. The most common way for a party to satisfy this burden is for the party to "provide the court with a credible financial declaration and [supporting] financial documentation to demonstrate that the *Jones* factors support an award of alimony." *Id.* ¶ 96. And in most cases, that is what the parties do; indeed, our current rules of civil procedure require parties in domestic cases to turn over to the other side, at the outset of the case, "a fully completed Financial Declaration, using the court-approved form," along with "attachments," including recent bank statements and tax returns as well as "copies of statements verifying the amounts listed on the Financial Declaration." *See* Utah R. Civ. P. 26.1(c). The court-approved form includes a table where parties are expected to set forth, in line-item fashion, their monthly expenses. *See Financial Declaration*, Utah State Courts, 6-7, https://legacy.utcourts.gov/howto/family/financial_declaration/ docs/1352FA_Financial_Declaration.pdf [https://perma.cc/K77G-Y99V]. And these disclosures,

like other required disclosures, must be timely supplemented in the event things materially change. *See* Utah R. Civ. P. 26(d)(5). At trial, parties seeking alimony often use the line-item expense categories listed in their financial declarations as a template for the "needs" portion of their alimony request, offering testimony about the items in the declaration and seeking admission into evidence of the applicable documents (bank statements, credit card statements, tax returns, etc.) that support the various expense categories. *See, e.g.*, *Miner*, 2021 UT App 77, ¶¶ 20–63 (analyzing separate challenges to eleven of the forty-five expense line items in a trial court's alimony award).

¶15     In this case, however, Kawasaki did not follow this course of action. She did submit a financial declaration in 2017, at the outset of the case, and it was used in connection with the temporary orders hearing. But she did not ever supplement that declaration in advance of the trial held some three years later; she did not testify about that declaration at trial; she failed to produce—even after the court ordered her to do so—any financial documentation supporting her alleged expenses; and she failed to gain admission of either her declaration or any specific financial documentation into evidence at trial.[2]

¶16     Litigants who bring alimony claims but fail to support them with the usual documentation put trial courts in a very difficult spot. On the one hand, trial courts are trained to be sensitive to the potential unfairness of a litigant—in particular one who has spent years, perhaps even decades, out of the workforce while raising children—being left without sufficient support, especially where that litigant's spouse is able to live comfortably. Indeed, alimony is supposed to allow the recipient spouse to

_____

2. As noted, the trial court excluded some of Kawasaki's offered evidence on the ground that the documents had not been timely disclosed to Wellman. On appeal, Kawasaki does not challenge the court's ruling excluding her undisclosed evidence.

enjoy, as much as possible, the marital standard of living, and is designed "to prevent the recipient spouse from becoming a public charge." *Id.* ¶ 14 (quotation simplified). In this context, as is often the case in family law, trial courts have wide discretion to fashion remedies that fit the situation faced by the family at issue. *See Vanderzon v. Vanderzon*, 2017 UT App 150, ¶ 41, 402 P.3d 219 ("Trial courts have considerable discretion in determining alimony and determinations of alimony will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." (quotation simplified)).

¶17   In particular, trial courts are vested with discretion to "impute figures" for a recipient spouse's needs analysis, even where complete documentation is lacking, as long as there is sufficient evidence to support such imputation. *See Dahl*, 2015 UT 79, ¶ 116 (stating that courts "*may* impute figures" (emphasis added)). In cases where an alimony claimant fails to provide sufficient documentation, courts may find adequate support for the imputation of particular expenses in, for instance, the opposing party's documentation, *see id.* (stating that "the district court could have . . . imputed a figure to determine [the recipient spouse's] financial need based . . . on . . . [the opposing party's] records of the parties' predivorce expenses"), or in updated financial declarations supported not by timely disclosed financial documents but instead by the sworn testimony of witnesses, *see Munoz-Madrid v. Carlos-Moran*, 2018 UT App 95, ¶ 10, 427 P.3d 420 (upholding a trial court's imputation of some of a recipient spouse's expense items, despite the spouse's "fail[ure] to provide supporting documentation with her financial declaration," because the spouse had provided an updated financial declaration and another witness had offered specific testimony at trial about the spouse's rent and utilities expenses that was "consistent with [the] financial declaration").

¶18   But on the other hand, trial courts' discretion in this arena is not unlimited, and courts that go too far in trying to help

litigants who haven't sufficiently supported their alimony claims risk abusing their discretion. Courts that make alimony awards "must support [those] determinations with adequate findings," *see Rule v. Rule*, 2017 UT App 137, ¶ 22, 402 P.3d 153, including specific findings regarding a recipient spouse's reasonable monthly needs. Where trial courts attempt to make alimony awards in the absence of specific findings, supported by evidence in the record, regarding a recipient spouse's actual needs, those courts have often been reversed. *See, e.g.*, *Eberhard v. Eberhard*, 2019 UT App 114, ¶¶ 36–40, 449 P.3d 202 (reversing as inadequately supported a trial court's alimony award that, on its face, exceeded the recipient spouse's monthly needs but was apparently designed to vaguely bring her more into line with "the marital standard of living," and stating that "[w]ithout the district court more precisely spelling out the amount that [the recipient spouse] realistically requires . . . to enjoy the marital standard of living, we are unable to discern whether the alimony award, in fact, exceeds her needs"); *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶¶ 11–13, 80 P.3d 153 (reversing where "the trial court engaged in an effort to simply equalize income . . . rather than going through the traditional needs analysis," and concluding that "the trial court abused its discretion by failing to enter specific findings on [the recipient spouse's] financial needs and condition").

¶19 In this case, the trial court determined that the evidence Kawasaki presented at trial was insufficient to allow the court to make the findings necessary for an alimony award. In its ruling, the court noted that Kawasaki "did not submit a financial declaration" at trial, nor did she present any "bank statements" or other "documentary evidence regarding her . . . expenses" The court—presumably in an effort to locate admitted evidence upon which it could rest an imputation of some of Kawasaki's expenses—then noted that Wellman had not submitted a financial declaration at trial either, nor had he provided bank statements or any "detailed testimony regarding either of the [parties'] monthly financial obligations." Finally, the court discussed Kawasaki's

own testimony at trial, but concluded that her "testimony regarding . . . her monthly expenses . . . was inconsistent and missing critical information," and therefore "did not persuade the [c]ourt that alimony should continue."

¶20    Under the circumstances presented here, we discern no abuse of the trial court's discretion in reaching this conclusion. As already noted, Kawasaki's attempt to place into evidence undisclosed bank statements was denied, and after that Kawasaki made no real effort to provide the court, at trial, with any concrete evidence of her monthly expenses. She did not attempt to submit her 2017 financial declaration for the court's consideration at trial, and she did not attempt to provide any testimony about the line-item expenses on that declaration. And although she had in her possession, at trial, a copy of Wellman's financial declaration, she asked Wellman only a few general questions about it, and did not attempt to ask him any specific questions about the expense line items. The only categories of expenses that she even generally discussed, through questioning of witnesses, were housing—as to which she testified that she thought a suitable apartment would cost "about $2,000" per month—and a vague category her counsel referred to as how much it would "cost to live with three kids"—as to which Wellman offered his view that "$1,000 to $1,500 [per month] for daily activities and food" would not be "unreasonable." Against the backdrop of this evidence, we consider it far from an abuse of the trial court's discretion for the court to conclude that Kawasaki had failed to carry her burden of demonstrating a need for alimony.

¶21    Kawasaki resists this conclusion on two grounds. First, she asserts that the trial court misinterpreted applicable law by refusing to even consider her alimony claim after the court ruled that the untimely disclosed bank statements were inadmissible. Kawasaki correctly argues—as we have explained above—that a party's failure to provide documentation supporting an alimony claim is not necessarily fatal, so long as other evidence in the

record can support imputation of the necessary expenses, and so long as a trial court is willing to exercise its discretion to make such imputations. And we acknowledge that certain statements by the trial court, during the pretrial discussion about the bank statements, may have left the impression that the court was refusing to consider Kawasaki's alimony claim altogether. For instance, at one point Wellman's attorney stated that his understanding of *Dahl* was "that a failure to supply bank statements prevents the [c]ourt from actually evaluating" Kawasaki's alimony claim, and the court responded by stating that counsel's argument was "consistent with [its] understanding of *Dahl*." But later, the court noted that "if there are other documents" that could be used to "substantiate [Kawasaki's] finances, then you can use those," and told Kawasaki that she could "address alimony with documents that are already in the record" and that "if there are records of some kind that would support a claim for alimony, then [Kawasaki] can go forward" with that claim. And in its written ruling, the court clearly did not perceive Kawasaki's alimony claim as entirely barred by her failure to provide documentation; instead, the court evaluated that claim against the backdrop of the evidence that had been presented at trial. Kawasaki is simply incorrect when she asserts that the trial court refused to consider her alimony claim.

¶22    Second, Kawasaki asserts that the trial court could have, and should have, made findings regarding her monthly needs from the evidence available in the record. We disagree that the evidence could have supported imputation of the full list of Kawasaki's expenses; with regard to most of them, there was simply no evidence admitted whatsoever. For instance, there was no specific discussion at trial of utility expenses, automobile or transportation expenses, entertainment expenses, or clothing expenses. Had the trial court attempted to make findings regarding such unsupported expenses, it likely would have exceeded its discretion.

¶23    But a trial court, on this record, could perhaps have exercised its discretion to impute to Kawasaki a housing expense of $2,000 and a food expense of, say, $1,000. After all, housing and food are universal needs, and those figures were discussed at trial by both Kawasaki and Wellman and appeared to have been more or less undisputed. But while the court perhaps *could have* exercised its discretion to impute these two discrete expenses, we are not prepared to say that it was an abuse of discretion not to do so; after all, the evidence supporting these figures was vague at best and unsupported by any documentation. And in any event, even if the court *had* made these two imputations, that would have resulted in a determination that Kawasaki's demonstrated monthly expenses were $3,000, a conclusion that would not have resulted in an alimony award given that Kawasaki's net income was $2,800 per month and that Wellman had been ordered to pay Kawasaki $1,578 per month in child support. *See Roberts v. Roberts*, 2014 UT App 211, ¶ 14, 335 P.3d 378 (stating that, "regardless of the payor spouse's ability to pay more, the recipient spouse's demonstrated need must constitute the maximum permissible alimony award" (quotation simplified)). Under these circumstances, even if the court had reached to assist Kawasaki by making these two specific imputations, that effort would not have resulted in any alimony award to Kawasaki.

¶24    In some cases, the evidence is solid enough, even without proper documentation from the alimony claimant, for a court to be able to exercise its discretion to impute at least some of the claimant's expenses, especially basic universal ones like housing and food. *See Munoz-Madrid*, 2018 UT App 95, ¶ 10; *see also Dahl*, 2015 UT 79, ¶ 116 (stating that "courts *may* impute figures" (emphasis added)). Indeed, in keeping with the purposes of alimony, courts should attempt to do so where the evidence and equity permit. But in other cases—including this one—the evidence is simply not strong enough to support imputation of enough expenses to justify an alimony award. *See Dahl*, 2015 UT 79, ¶¶ 108–09 (stating that, where the claimant "provided no

financial declaration, no supporting financial documentation, and no expert testimony," her "unsubstantiated testimony did not satisfy her burden of showing her financial need"). We perceive no abuse of discretion in the trial court's conclusion that, on this record, Kawasaki had not borne her burden of demonstrating entitlement to alimony.

## CONCLUSION

¶25     As the party seeking an alimony award, Kawasaki bore the burden of showing her financial need for such an award. The trial court determined that Kawasaki had failed to meet that burden, and that conclusion was not an abuse of the court's discretion.

¶26     Affirmed.

_____