2024 UT App 28

## THE UTAH COURT OF APPEALS

JACQUELINE P. SMITH,
Appellee,
*v.*
DANIEL H. SMITH,
Appellant.

Opinion
No. 20220697-CA
Filed March 7, 2024

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 194902295

David Pedrazas, Attorney for Appellant

Deborah L. Bulkeley, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

OLIVER, Judge:

¶1    This divorce case illustrates why the sequence of determining alimony matters. We recently clarified the three-step procedure for alimony in *Fox v. Fox*, 2022 UT App 88, 515 P.3d 481, *cert. denied*, 525 P.3d 1263 (Utah 2022). Here, the district court ordered an alimony award of more than double the receiving spouse's demonstrated need because it accounted for the marital standard of living at the end of the analysis instead of at the beginning. Because the district court employed a backward version of the three-step procedure for alimony, we vacate and remand.

BACKGROUND

¶2 Daniel H. and Jacqueline P. Smith separated after more than thirty years of marriage. Their divorce case proceeded to a one-day bench trial that mostly addressed alimony. Daniel[1] represented himself at trial. At the trial's conclusion, the district court took several issues, including the alimony award, under advisement and issued a memorandum decision four days later.

¶3 On her financial declaration used at trial, Jacqueline indicated her monthly net income was $3,274.55 and her monthly expenses were $5,193.79. Jacqueline listed all her line-item expenses in the "current amount" column and left the "marital expenses" column blank. Jacqueline presented no evidence at trial of the parties' marital standard of living and no evidence that any of her listed expenses were different during the marriage than they were at the time of trial. She testified only to the reasons she sought a divorce. The district court examined the expenses and adjusted some of the amounts, finding that Jacqueline had reasonable monthly expenses of $4,184.61. This left her with an unmet need of $910.06 per month.

¶4 Daniel's financial declaration admitted at trial indicated his monthly net income was $7,757 and his monthly expenses—all listed in the "current amount" column and none in the "marital expenses" column—were $8,280. The district court similarly examined Daniel's expenses and made adjustments, finding that Daniel had reasonable monthly expenses of $4,013.90 plus his child support obligation of $703 for a total monthly expense of $4,716.90, leaving him with a "positive income of $3,040.10 a month."

¶5 The district court stated that it adjusted the parties' expenses in "an effort to put them on relatively equal footing,

---

1. Because the parties share the same last name, we refer to them by their first names for clarity, with no disrespect intended.

recognizing that the parties' level of expenses at the time of trial are not representative of their marital standard of living." Rather than award Jacqueline alimony in the amount of her unmet need, the district court calculated alimony by equalizing the difference between Jacqueline's monthly negative income and Daniel's monthly positive income. The court reasoned that "it is fair and equitable to equalize the combined disparity of $3,950.16 per month" and awarded Jacqueline $1,975 per month in alimony. The alimony award exceeded Jacqueline's demonstrated monthly need by $1,064.94.

¶6     The district court instructed Jacqueline's counsel to draft proposed findings and a proposed decree based on the court's ruling. Daniel, having obtained counsel since trial, objected to the proposed findings on multiple issues, including the alimony calculation. The district court entered the findings and decree without making any changes to the alimony award.

¶7     Daniel then filed a motion to amend the findings, arguing that the district court did not make sufficient findings to support an alimony award that exceeded Jacqueline's demonstrated need. The district court held a hearing on the motion, and Daniel asked the court to "recalculate and redetermine the alimony" because a "spouse's demonstrated need must constitute the maximum permissible alimony award." The court explained the $1,975 alimony award "equalizes the net income of the parties for both of them. That keeps them akin as we can to the lifestyle to which they were accustomed during the time of the marriage." Daniel asserted that equalization should occur only "when somebody has an excess need that the other party can't meet." And Jacqueline suggested the court make "some additional findings" to support what she viewed as its "appropriate" effort to consider the parties' needs and "augment those needs with excess income." The district court denied Daniel's motion, leaving the alimony award at $1,975 per month.

ISSUE AND STANDARD OF REVIEW

¶8    Daniel challenges the district court's alimony award.[2] "We review a court's alimony determination for an abuse of discretion." *Fox v. Fox*, 2022 UT App 88, ¶ 11, 515 P.3d 481 (cleaned up), *cert. denied*, 525 P.3d 1263 (Utah 2022). Although "we will not lightly disturb a trial court's alimony ruling, we will reverse if the court has not exercised its discretion within the bounds and under the standards we have set." *Knight v. Knight*, 2023 UT App 86, ¶ 17, 538 P.3d 601 (cleaned up).

ANALYSIS

¶9    "Under Utah law, the primary purposes of alimony are: (1) to get the parties as close as possible to the same standard of living that existed during the marriage; (2) to equalize the standards of living of each party; and (3) to prevent the recipient spouse from becoming a public charge." *Fox v. Fox*, 2022 UT App 88, ¶ 15, 515 P.3d 481 (cleaned up), *cert. denied*, 525 P.3d 1263 (Utah 2022). An alimony award need not provide "for only basic needs but should be fashioned" in such a way "to approximate the parties' standard of living during the marriage as closely as possible." *Id.* (cleaned up). "The appropriate amount of any alimony award is governed by a multi-factor inquiry" now found in Utah Code section 30-3-5(10)(a). *Miner v. Miner*, 2021 UT App 77, ¶ 16, 496 P.3d 242. "[C]ourts must consider the statutory factors," including "the financial condition and needs of the recipient spouse," "the recipient's earning capacity," and "the ability of the payor spouse to provide support." *Rule v. Rule*, 2017

---

2. Daniel also challenges the district court's denial of his motion to amend the findings. But we need not reach this issue because we conclude the district court did not follow "the standards we have set" in its alimony calculation, *see Knight v. Knight*, 2023 UT App 86, ¶ 17, 538 P.3d 601 (cleaned up), and we remand the case on that basis.

UT App 137, ¶ 13, 402 P.3d 153; *see also Dahl v. Dahl*, 2015 UT 79, ¶ 94, 459 P.3d 276.

¶10     Thus, there are three steps to "the established process to be followed by courts considering an award of alimony." *Fox*, 2022 UT App 88, ¶ 20 (cleaned up); *see also Rule*, 2017 UT App 137, ¶ 19. First, a court must "assess the needs of the parties, in light of their marital standard of living."[3] *Fox*, 2022 UT App 88, ¶ 20 (cleaned up). Second, a court "must determine the extent to which the receiving spouse is able to meet his or her own needs with his or her own income." *Id.* (cleaned up). Third, a court must "assess whether the payor spouse's income, after meeting his or her needs, is sufficient to make up some or all of the shortfall between the receiving spouse's needs and income." *Id.* (cleaned up).

¶11     Here, the district court abused its discretion when it failed to properly follow this three-step process. Instead of considering the marital standard of living at step one when calculating each spouse's need, the district court did so at step three, when it equalized the parties' income. While we do not fault the court for wanting to "equalize the standards of living of each party," as it is one of the purposes of alimony, *see id.* ¶ 15 (cleaned up), the court did not do so in accordance with the standards Utah appellate courts have established for an alimony determination.

¶12     In step one, the district court assessed both parties' needs "at the time of trial" rather than in light of the marital standard of living. *See id.* ¶ 20. But it was not an abuse of discretion to have done so because neither Jacqueline nor Daniel provided any

---

3. "The marital standard of living is that which the parties *shared*, and courts consider the parties as a single unit when evaluating that standard." *Knight*, 2023 UT App 86, ¶ 32. In terms of alimony, "the marital standard of living analysis is about whether the parties' proposed points of calculation are *consistent* with the parties' manner of living and financial decisions." *Id.* (cleaned up).

evidence of the marital standard of living. Indeed, both of their financial declarations listed their monthly expenses in the "current amount" column with nothing listed in the "marital expenses" column, despite the instructions on the form to complete both columns if one of the parties has requested alimony. It is incumbent upon the parties to present evidence of the marital standard of living if they want the district court to consider the expenses during the marriage that differ from the expenses at the time of trial. *See Clarke v. Clarke*, 2023 UT App 160, ¶ 62 ("If a party offers into evidence only time-of-trial expense amounts, and does not provide the court with any evidence of pre-separation expenses (to the extent they are different), that party has no right to complain when the court awards the time-of-trial amounts."). And it is important that they provide such evidence, because step one—where the district court determines the parties' reasonable expenses—is the place for taking the marital standard of living into account in the alimony calculation.

¶13 In step three, the district court then combined Jacqueline's demonstrated need of $910.06 and David's excess income of $3,040.10, "equalize[d] the combined disparity of $3,950.16," and gave Jacqueline an alimony award of half that amount, $1,975. Daniel contends the district court should have capped the alimony award at the $910.06 monthly shortfall the district court calculated as the difference between Jacqueline's income and her expenses. We agree with Daniel. "Regardless of the payor spouse's ability to pay more, the recipient spouse's demonstrated need must constitute the maximum permissible alimony award." *Roberts v. Roberts*, 2014 UT App 211, ¶ 14, 335 P.3d 378 (cleaned up); *Rule*, 2017 UT App 137, ¶ 17 ("The receiving spouse's needs ultimately set the bounds for the maximum permissible alimony award."); *Barrani v. Barrani*, 2014 UT App 204, ¶ 30, 334 P.3d 994 ("An alimony award in excess of the recipient's need is a basis for remand even when the payor spouse has the ability to pay."); *Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct. App. 1994) ("[T]he spouse's demonstrated need must . . . constitute the

maximum permissible alimony award."). Thus, the district court abused its discretion when it awarded Jacqueline alimony in an amount greater than her demonstrated need.

¶14 We also caution district courts that they "should not calculate alimony by simply dividing the couple's pre-separation expenses in half," *Clarke*, 2023 UT App 160, ¶ 57, or by "presumptively award[ing]" half of the "total money the parties spent each month during the marriage," *Fox*, 2022 UT App 88, ¶ 25. In other words, the proper way to take the marital standard of living into account is at step one "by assessing a party's claimed line-item expenses in light of that standard." *Clarke,* 2023 UT App 160, ¶ 59.

¶15 Here, the district court abused its discretion at step three when it took the parties' "combined disparity of $3,950.16" per month and awarded half of that amount to Jacqueline. Regardless of how much income the payor spouse may have, the purpose of alimony is to meet the demonstrated need of the recipient spouse, not to redistribute all the income between the spouses. *See Roberts*, 2014 UT App 211, ¶ 14 ("[T]he core function of alimony is therefore economic—it should not operate as a penalty against the payor nor a reward to the recipient."). And although "we accord trial courts broad discretion in dividing the shortfall and apportioning that burden" in the third step, such discretion is premised on the assumption the court "has properly determined that a shortfall exists between the parties' resources and needs." *Rule*, 2017 UT App 137, ¶ 21.

¶16 Sequence matters. *See id.* ¶ 22 ("*Once* the court has determined that there are insufficient resources to meet the baseline needs established by the marital living standard, the court should *then* equitably allocate the burden of the shortfall between the parties." (emphases added)); *see also Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 12, 80 P.3d 153 (holding that "attempting to equalize the parties' income rather than going

through the traditional needs analysis" constitutes an abuse of discretion). Just as it is an abuse of discretion to "skip[] over the traditional needs analysis and move[] directly to address what it perceives to be insufficient resources," *see Rule*, 2017 UT App 137, ¶ 23, it was an abuse of discretion here when the district court used the marital standard of living at step three to increase the amount of the alimony award beyond the demonstrated need.

¶17 As a final note, we reiterate that it is proper for a district court to consider the marital standard of living during step one of the alimony analysis, so long as the parties have presented such evidence. We would normally vacate the alimony award and remand the matter to the district court "for the court to reassess its alimony determinations in light of the marital standard of living." *Id.* ¶ 32. But here, neither party presented evidence of their expenses during the marriage. Indeed, they both left the "marital expenses" column on their financial declarations blank. As a result, there is no evidence in the record from which the district court can make findings that Jacqueline's expenses were different from what she listed. Thus, the district court's finding that her demonstrated need was $910.06 limits "the maximum permissible alimony award" to that amount. *See Wellman v. Kawasaki*, 2023 UT App 11, ¶ 12, 525 P.3d 139.

CONCLUSION

¶18 The district court abused its discretion when it employed the incorrect analysis in computing Jacqueline's alimony award. The court did not follow the three-step process required by Utah law. Accordingly, we vacate and remand the case to the district court for entry of an alimony award of $910.06 per month.

———————